## INDEX OF EXHIBITS

EXHIBIT A          Henderson LOP

EXHIBIT B          Faulks LOP

EXHIBIT C          Church LOP

# EXHIBIT A

Henderson LOP

# RESIDENTIAL LEASE WITH OPTION TO PURCHASE AGREEMENT
## (TRIPLE-NET, BONDABLE LEASE)

This **RESIDENTIAL LEASE WITH OPTION TO PURCHASE AGREEMENT** is entered into on this day **15TH** of **JUNE, 2014** between **KAJA HOLDINGS 2, LLC** (hereinafter known as the "LESSOR") and **RHONDA CHARISEE HENDERSON & KIARA LASHAUN HENDERSON** (hereinafter known as the "LESSEE(s)").

Witnesseth, that if the LESSEE(s) shall first make the payments and perform the covenants hereafter described, the LESSOR hereby covenant(s) and agree(s) to LEASE the property commonly known as █████████████████ in the County of **WAYNE**, the city of **INKSTER**, the State of **MICHIGAN**, to the LESSEE(s) for the term and covenant(s) set forth herein, and further known and described as follows, to-wit:

SEE ATTACHMENT "A" FOR LEGAL DESCRIPTION OF PROPERTY

The premises, as described above, with all appurtenances, are hereby LEASED to the LESSEE(s) for a term of 84 months. This LEASE shall commence the **15TH** of **JUNE, 2014**, and shall be paid, at the signing of this agreement, in the following manner: **SEVEN HUNDRED FIFTY DOLLARS AND NO CENTS ($750.00)** as an option consideration, and **THREE HUNDRED THREE DOLLARS AND NO CENTS ($303.00)** as the monthly lease payment, plus **TWO HUNDRED TWENTY-FIVE DOLLARS AND NO CENTS ($225.00)** for real estate taxes (real estate taxes subject to change), plus **TWENTY-FIVE DOLLARS AND NO CENTS ($25.00)** for Casualty and General Liability Insurance (insurance premium subject to change), making the total initial payment **ONE THOUSAND THREE HUNDRED THREE DOLLARS AND NO CENTS ($1,303.00)**.

All subsequent monthly payments shall be due on or before the **15TH** day of each month, commencing on the **15TH** of **JULY, 2014** until the term of this agreement has been fulfilled and shall be in the amount of **FIVE HUNDRED FIFTY-THREE DOLLARS AND NO CENTS ($553.00)**. This agreement expires on the last calendar day of **MAY, 2021**. **FIFTY-FIVE DOLLARS AND FIVE CENTS ($55.05)** of each monthly lease payment, as well as the option consideration paid by the LESSEE(s) shall be credited towards the purchase price of the premises for the extent of this agreement, and shall be considered as non-refundable escrow towards the **PURCHASE PRICE**.

The **PURCHASE PRICE** of the premises, as described above, will be **FORTY THOUSAND DOLLARS AND NO CENTS ( $40,000.00)**, to be satisfied on or before the expiration of this agreement, should the LESSEE(s) choose to exercise their rights to purchase as described hereinafter.

Upon the expiration of the term of this agreement or before, the LESSEE(s) shall have three options, to-wit:

1.  **OPTION TO CONVERT TO SELLER FINANCING:** LESSEE(s) may, if all the requirements and covenants of this agreement have been fulfilled, either upon the expiration of this agreement, or upon the time the total credit(s) paid towards the **PURCHASE PRICE** reaches the amount of 30% of the **PURCHASE PRICE**, whichever comes first, this lease shall convert to a Seller Financed Contract. This conversion shall be documented by a separate instrument. The **PURCHASE PRICE** as set forth in the instrument documenting the conversion to Seller Financing shall be equivalent to the difference of the **PURCHASE PRICE** listed in this agreement minus any/all credit(s) paid towards said **PURCHASE PRICE**.

2.  **OPTION TO PURCHASE PREMISES:** LESSEE(s) may, on or before the expiration of this agreement, choose to purchase the above referenced premises for the remainder of the **PURCHASE PRICE** as described above with all credits paid included. Fulfillment of the **PURCHASE PRICE** by the LESSEE(s) shall be treated as a **CASH SALE**, at which time the LESSOR shall provide the LESSEE(s) with a good and sufficient deed, clear of all encumbrances, with exception to any/all encumbrances caused by the action or inaction, whether direct or indirect, of the LESSEE(s), and transfer title of the premises from the LESSOR to the LESSEE(s). This **CASH SALE** shall be documented by a separate instrument.

3. **OPTION TO FORFEIT LEASE:** LESSEE(s) may, on or before the expiration of this agreement, by mutual agreement between LESSOR and LESSEE(s), as evidenced in writing, choose to forfeit their rights to the premises described herein and vacate the premises and all appurtenances within FIVE (5) days of the determined expiration of this agreement. Should the LESSEE(s) choose to forfeit this agreement, all personal property and belongings shall be vacated within FIVE (5) days of the determined expiration of this agreement. Should the LESSEE(s) choose to vacate the premises, any and all improvements that have been built into the property, including but not limited to any/all built in appliances, shall remain with the property and become considered forfeit.

    a. **FAILURE TO VACATE PREMISES:** Should the LESSEE(s) fail to comply with the covenants of OPTION 3 (above), LESSOR shall have the right to evict LESSEE(s) according to the proper judicial process determined by the locality in which the premises is located.

    b. **PERSONAL PROPERTY:** Should the LESSEE(s) elect to choose OPTION 3 (above), any and all of LESSEE(s), their assigns, agents, acquaintances, and/or other personal property remaining in, around, or about the premises or its appurtenances shall be forfeit so far as the FIVE (5) day vacation period has expired.

    c. **CONDITION OF PREMISES:** LESSEE(s) agree that upon the execution of OPTION 3 (above), LESSEE(s) shall vacate premises in the same condition or better as of the execution of this agreement. LESSEE(s) acknowledge that should they vacate the premises in worse condition than at the time of execution of this agreement, any and all appropriate legal action may be sought by LESSOR for restitution.

## NON-PAYMENT, EVICTION, AND LATE FEE NOTIFICATION

LESSEE(s) acknowledges and understands that if the full amount of the monthly payment described herein has not been received by the end of **TEN (10)** calendar days after the date it is due, a late charge in the amount of **TWENTY-FIVE DOLLARS AND NO CENTS ($25.00)** will become due, the total payment and penalty being the amount of **FIVE HUNDRED SEVENTY-EIGHT DOLLARS AND NO CENTS ($578.00).** Any late fee charged shall not be applied/assumed as credit towards the **PURCHASE PRICE.**

For each bad check there will be Thirty Dollars ($30.00) bad check fee applied.

LESSEE(s) acknowledges and understands that in the event of their failure to perform according to the covenants set forth herein, particularly, but not limited to, the full amount of the monthly payment described herein not being received by the end of FIFTEEN (15) calendar days after the date it is due, they may be placed in eviction in the pertinent Court of competent jurisdiction pertaining to the county in which the premises is located or other appropriate judicial process.

## AS IS/WHERE IS LEASE NOTIFICATION

LESSEE(s) acknowledges and understands that the premises referenced herein is LEASED in strictly "AS IS/WHERE IS" condition, and it is mutually agreed, by and between the parties hereto, that the LESSEE(s) is solely responsible for maintaining the premises in a safe and non-hazardous condition during the duration of this agreement, and for bringing the building and premises to a habitable condition, compliant with any and all State, County, and City building and premises codes, within a reasonable period of time not exceeding THREE (3) months of the date of execution of this agreement, and maintaining the premises in a good state of repair during the term of this agreement.

**LESSEE(s) also hereby acknowledges and understands that the LESSEE(s), upon the execution of this agreement, may take possession of the premises referenced herein, but will not occupy or allow to be occupied the stated premises until the building and premises are brought to a habitable condition, compliant with any and all State, County, and City building and premises codes.**

LESSEE(s) also hereby acknowledges and understands that the LESSEE(s), upon the execution of this agreement, shall be immediately responsible for payment or alleviation of any encumbrances including, but not limited to, all taxes, assessments and/or impositions (includes such fees as ground rents, city/county miscellaneous fees as they require, property violations and/or fines levied, water/sewer charges, electrical/gas usage charges, garbage fees and property taxes levied, etc.) that may be legally levied or imposed upon said premises that are delinquent or currently due at the execution of this agreement without recourse.

## RIGHT TO INSPECT PREMISES

LESSOR, its employees or agents, shall have the right, after 24 hours of notice to the LESSEE(s), to enter and inspect the premises and all its appurtenances referenced in this agreement at reasonable times for the purpose of inspecting the performance of the LESSEE(s) pertaining to the terms and conditions of this agreement set forth herein. LESSEE(s) hereby agrees to and grants LESSOR such stated rights.

Upon inspection of the premises and all its appurtenances, should LESSOR deem that the terms and covenants of this agreement have not been fulfilled by the LESSEE(s), such as but not limited to maintenance, repair(s), or other reasonable grounds, LESSOR shall have the right to terminate this agreement immediately by written notice to the LESSEE(s), and should it require, the LESSEE(s) may be placed in eviction in the pertinent Court of competent jurisdiction pertaining to the county in which the premises is located or other appropriate judicial process. Such termination of this agreement does not entitle the LESSEE(s) to any payments made, whether towards the option consideration or not, to any refund whatsoever. LESSEE(s) hereby agrees to and grants LESSOR such stated rights.

## LESSEE'S RIGHT TO SUB-LEASE

If all the requirements and covenants of this agreement are in full effect, including but not limited to maintaining the premises in a safe and non-hazardous condition during the duration of this agreement, and for bringing the building and premises to a habitable condition, compliant with any and all State, County, and City building and premises codes, LESSEE(s) shall have the right to sub-lease the premises referenced herein upon the mutual agreement to sub-lease said premises, in writing, between the LESSEE(s) and LESSOR. This sub-lease and acknowledgment of sub-lease shall be documented by a separate instrument to be approved by the LESSOR in its sole discretion. LESSEE(s) hereby acknowledges and agrees that the requirements and conditions of this agreement shall take priority, including but not limited to the "AS IS/WHERE IS" clause, over any sub-lease agreement.

Prior to the execution of any sub-lease agreement, LESSEE(s) hereby acknowledges and agrees to provide LESSOR with appropriate contact information for the sub-lessee(s), including but not limited to phone number(s), email address, emergency contacts, and other information that may be required by the LESSOR prior to the execution of the sub-lease.

Upon the execution of any sub-lease between LESSEE(s) and sub-lessee(s), this agreement shall remain in full effect according to the provisions set-forth herein. Upon the event that the requirements and covenants set forth herein are not in full effect including, but not limited to non-payment, LESSEE(s) may be placed in eviction in the pertinent Court of competent jurisdiction pertaining to the county in which the premises is located or other appropriate judicial process, and LESSOR shall have the immediate right to convert the sub-lessee(s) to LESSEE(s) in the former LESSEE(s) stead. This conversion shall be documented by a separate instrument.

## INSURANCE NOTIFICATION

The LESSEE(s) will pay for Casualty and General Liability insurance as a part of their monthly payment. This fee is a Casualty and General Liability Insurance Policy and is not a replacement for renters insurance or other appropriate insurance to be obtained by the LESSEE(s). This policy only covers the LESSOR's liability in this property. Without renters insurance or other appropriate insurance, the LESSEE(s) will still be responsible for damage or loss of personal belongings.

The LESSEE(s) will notify the LESSOR immediately in the event of catastrophic damage to the property. Catastrophic damage shall be defined as any damage requiring over $5,000 to repair.

If the damage to the improvements on the Property is less than fifty (50%) percent of the total value of the improvements, the LESSEE(s) shall be obligated to repair or reconstruct said property. The LESSOR shall apply the proceeds directly to the costs of such repair or reconstruction. The LESSEE(s) shall be liable for any deficiency after application of the insurance money to such costs.

If the damage to the improvements on the Property is in excess of fifty (50%) percent of the total value of the improvements, the LESSEE(s) shall have the option as to whether to repair or reconstruct said property following such casualty loss.

If the LESSEE(s) elects not to repair or reconstruct said property, then the unpaid balance of the PURCHASE PRICE shall at the option of the LESSOR become due and payable forthwith, and the insurance proceeds shall be applied towards the application of such sum, any surplus of the insurance proceeds over and above the LESSEE(s) obligations shall be paid to the LESSEE(s). In the event that the agreement is paid out as a result of the application of the insurance proceeds, the LESSOR shall deliver a deed to the LESSEE(s) and consummate the transaction. In the event the contract is not paid out as a result of the application of the insurance process pursuant to an election not to repair or reconstruct said property after casualty, the proceeds shall be credited to the account of the LESSEE(s) and the LESSEE(s) will continue to make regular payments pursuant to the terms of the agreement until the LESSEE(s) obligations are satisfied and the agreement consummated.

If the LESSEE(s) elects to repair or reconstruct, the insurance proceeds shall be applied by the LESSOR to the costs of such repair or reconstruction, the LESSEE(s) shall submit the building plans to the LESSOR for approval, for which approval shall be granted if the value of the land after the repair or reconstruction will equal or exceed the value of the premises immediately prior to the casualty. If requested by the LESSEE(s), the LESSOR will, after approval of the LESSEE(s) building plans, turn over the insurance proceeds to an insurance trustee for the purpose of paying for the repairs or reconstruction.

Any surplus of insurance proceeds over and above the costs of repair or reconstruction shall be delivered to the LESSEE(s), and any deficiency remaining after application of such proceeds to the costs of repair or reconstruction shall be paid by the LESSEE(s).

*[signature(s) on the following page]*

IN WITNESS WHEREOF, The parties to these presents have hereunto set their hands and seals the day and year first above written.

SIGN→
HERE

_____          _____
WITNESS                                   RHONDA CHARISEE HENDERSON
(sign and print)                          (sign and print)

SIGN→
HERE

_____          _____
WITNESS                                   KIARA LASHAUN HENDERSON
(sign and print)                          (sign and print)

State of **MICHIGAN**

County of _____

On this, the _____ day of _____, **2014**, before me, a Notary Public for said State and County, personally appeared _____ and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal

_____
NOTARY PUBLIC FOR **MICHIGAN**
Printed Name: _____
My commission expires _____. (SEAL)


**************************************************************************************************

**KAJA HOLDINGS 2, LLC**

_____          _____
WITNESS                                   BY AUTHORIZED SIGNER
(sign and print)                          (sign and print)

State of South Carolina
County of _____

On this, the _____ day of _____, **2014**, before me, a Notary Public for said State and County, personally appeared _____ and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal

_____
NOTARY PUBLIC FOR South Carolina
Printed Name: _____
My commission expires _____. (SEAL)

## LEAD BASED PAINT RIDER AND RISK ASSESSMENT

RIDER TO AGREEMENT DATED the **15TH** day of **JUNE, 2014** between the LESSEE(s) and LESSOR for property located at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, **INKSTER**, County of **WAYNE**, State of **MICHIGAN**.

The LESSOR and the LESSEE(s) agree that the following additions and/or modifications are hereby made to the above-referenced Contract.

1. AGREEMENT CONTINGENCY. Pursuant to Federal Regulations, the provisions of this Rider must be satisfied before the LESSEE(s) are obligated under this agreement.

2. LEAD WARNING STATEMENT. The LESSOR, as owner of an interest in residential real property on which a residential dwelling was built prior to 1978, is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduce intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The LESSOR, as owner of an interest in residential real property, is required to provide any LESSEE(s) with whom the LESSOR enter into an agreement with any information on lead-based paint hazards from risk assessments or inspections in the possession of the LESSOR and notify the LESSEE(s) of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

3. LEAD HAZARD INFORMATION PAMPHLET. The LESSOR shall deliver to the LESSEE(s) an EPA approved lead-hazard information pamphlet (For example, Protect Your Family From Lead In Your Home). Intact lead-based paint that is in good condition is not necessarily a hazard.

4. LESSOR's DISCLOSURE. (Check all applicable boxes).

(A) Presence of Lead-Based Paint and/or Lead Based Paint Hazards.

(Check either (1) or (2) below).

[ ] (1) Hazards Known. Attached hereto is a statement signed by the LESSOR disclosing the presence of known lead-based paint and/or lead-based hazards at the Property, including but not limited to the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards and the condition of the painted surfaces.

[x] (2) Hazards Unknown. The LESSOR has no actual knowledge of the presence of lead-based paint and/or lead-based paint hazards at the property.

(B) Records and Reports Available to LESSOR. (Check either (1) or (2) below).

[ ] (1) Records Provided. The following is a list of all records and/or reports available to the LESSOR pertaining to lead-based paint and/or lead-based paint hazards at the property.

_____

_____

The LESSOR shall deliver a complete copy of each record and report to the LESSEE(s).

[x] (2) No Records. The LESSOR has no records or reports pertaining to lead based paint and/or lead-based paint hazards at the Property.

**5. RISK ASSESSMENT. (Mark with an X either (A) or (B) below.)**

[ ] (A) LESSEE(s) hereby waive/waives the opportunity to conduct a lead-based paint hazard risk assessment or inspection.

MARK
EITHER

[ ] (B) This agreement is contingent upon a risk assessment or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards being obtained by the V at the expense of the LESSEE(s) before 5:00 p.m. on the tenth calendar day after full execution of the agreement by all parties (the "Lead Paint Inspection Period"). If the results of such inspection are unacceptable to the LESSEE(s) for any reason whatsoever, the LESSEE(s) shall notify the LESSOR or the attorney of the LESSOR in writing within two business days after the end of the Lead Paint Inspection Period, together with a copy of the inspection and/or risk assessment report. In such case, either party may cancel the agreement upon written notice to the other party or the other party's attorney. If the notice of unacceptable results by the LESSEE(s) is not received by the LESSOR or the attorney of the LESSOR within two business days after the end of the Lead Paint Inspection Period, this Inspection contingency is deemed waived by the LESSEE(s). The definitions in Paragraph 1.B and C of Form 1.1 Contract Rider (1995) shall be used to determine whether or not the notice of unacceptable results by the LESSEE(s) has/have been received by the LESSOR before the end of the Lead Paint Inspection Period. The LESSOR will cooperate with the inspection made by the LESSEE(s) in such fashion as may be reasonably requested by the LESSEE(s). The LESSEE(s) may remove this contingency at any time without cause.

**6. ACKNOWLEDGMENT BY THE LESSEE(s) (initial and date):**

INITIAL
HERE

_____        _____        LESSEE(s) has/have received
**Initial**              **Date**             copies of all information, records and/or reports set forth in
                                            Paragraph 4 of this Rider or attached to this Contract.

INITIAL
HERE

_____        _____        LESSEE(s) has/have received
**Initial**              **Date**             an EPA approved lead hazard information pamphlet.

INITIAL
HERE

_____        _____        LESSEE(s) has/have received
**Initial**              **Date**             a 10-day opportunity (or mutually agreed upon period) or
                                            has/have waived the opportunity to conduct a risk assessment or
                                            inspection for the presence of lead-based paint and/or lead-based
                                            paint hazards.

*(signature(s) on the following page)*

Page 7 of 9

7. CERTIFICATION OF ACCURACY. The undersigned have reviewed the information above and certify to the best of their knowledge, that the statement they have provided is true and accurate.

Signed, sealed and delivered in the presence of:

**KAJA HOLDINGS 2, LLC**

_____          _____
WITNESS                                    BY AUTHORIZED SIGNER
(sign and print)                           (sign and print)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SIGN HERE ➤
_____          _____
WITNESS                                    **RHONDA CHARISEE HENDERSON**
(sign and print)                           (sign and print)

SIGN HERE ➤
_____          _____
WITNESS                                    **KIARA LASHAUN HENDERSON**
(sign and print)                           (sign and print)

State of **MICHIGAN**
County of _____

On this, the _____ day of _____, **2014**, before me, a Notary Public for said State and County, personally appeared
_____ and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal

_____
NOTARY PUBLIC FOR **MICHIGAN**
Printed Name: _____
My commission expires _____. (SEAL)

This Instrument Prepared by:


Vision Property Management, LLC
Angela Grimes
16 Berryhill Road
Columbia, SC 29210

## ATTACHMENT "A" TO THE RESIDENTIAL LEASE WITH OPTION TO PURCHASE AGREEMENT

### (Dated the 15TH day of JUNE, 2014, BETWEEN KAJA HOLDINGS 2, LLC and RHONDA CHARISEE HENDERSON & KIARA LASHAUN HENDERSON)

### LEGAL DESCRIPTION

Tax Parcel I.D. #:

Legal Description:

**COMMONLY KNOWN AS:**

# EXHIBIT B

Faulks LOP

K2M148

## RESIDENTIAL LEASE WITH OPTION TO PURCHASE AGREEMENT
## (TRIPLE-NET, BONDABLE LEASE)

This **RESIDENTIAL LEASE WITH OPTION TO PURCHASE AGREEMENT** is entered into on this day **15TH** of **MAY, 2016** between **KAJA HOLDINGS 2, LLC** (hereinafter known as the "LESSOR") and **ROBERTA LAVERNE FAULKS** (hereinafter known as the "LESSEE(s)").

Witnesseth, that if the LESSEE(s) shall first make the payments and perform the covenants hereafter described, the LESSOR hereby covenant(s) and agree(s) to LEASE the property commonly known as ████████████████ in the County of **WAYNE**, the city of **INKSTER**, the State of **MICHIGAN**, to the LESSEE(s) for the term and covenant(s) set forth herein, and further known and described as follows, to-wit:

### SEE ATTACHMENT "A" FOR LEGAL DESCRIPTION OF PROPERTY

The premises, as described above, with all appurtenances, are hereby LEASED to the LESSEE(s) for a term of **84** months. This LEASE shall commence the **15TH** of **MAY, 2016**, and shall be paid, at the signing of this agreement, in the following manner: **ONE THOUSAND TWO HUNDRED FIFTY DOLLARS AND NO CENTS ($1,250.00)** as an option consideration, and **THREE HUNDRED SIXTY-FIVE DOLLARS AND NO CENTS ($365.00)** as the monthly lease payment, plus **ONE HUNDRED TWENTY-FIVE DOLLARS AND NO CENTS ($125.00)** for real estate taxes (real estate taxes subject to change), plus **THIRTY DOLLARS AND NO CENTS ($30.00)** for Casualty and General Liability Insurance (insurance premium subject to change), making the total initial payment **ONE THOUSAND SEVEN HUNDRED SEVENTY DOLLARS AND NO CENTS ($1,770.00)**.

All subsequent monthly payments shall be due on or before the 15TH day of each month, commencing on the 15TH of **JUNE, 2016** until the term of this agreement has been fulfilled and shall be in the amount of **FIVE HUNDRED TWENTY DOLLARS AND NO CENTS ($520.00)**. This agreement expires on the last calendar day of **APRIL, 2023**. **NINETY-EIGHT DOLLARS AND NINETY-SIX CENTS ($98.96)** of each monthly lease payment, as well as the option consideration paid by the LESSEE(s) shall be credited towards the purchase price of the property. All credits are non-refundable.

The **PURCHASE PRICE** of the premises, as described above, will be **FORTY-FOUR THOUSAND NINE HUNDRED DOLLARS AND NO CENTS ($44,900.00)**, to be satisfied on or before the expiration of this agreement, should the LESSEE(s) choose to exercise their rights to purchase as described hereinafter.

Upon the expiration of the term of this agreement or before, the LESSEE(s) shall have three options, to-wit:

1. **OPTION TO CONVERT TO SELLER FINANCING:** LESSEE(s) may, if all the requirements and covenants of this agreement have been fulfilled, either upon the expiration of this agreement, or upon the time the total credit(s) paid towards the **PURCHASE PRICE** reaches the amount of 30% of the **PURCHASE PRICE**, whichever comes first, this lease shall convert to a Seller Financed Contract. This conversion shall be documented by a separate instrument. The **PURCHASE PRICE** as set forth in the instrument documenting the conversion to Seller Financing shall be equivalent to the difference of the **PURCHASE PRICE** listed in this agreement minus any/all credit(s) paid towards said **PURCHASE PRICE**.

2. **OPTION TO PURCHASE PREMISES:** LESSEE(s) may, on or before the expiration of this agreement, choose to purchase the above referenced premises for the remainder of the **PURCHASE PRICE** as described above with all credits paid included. Fulfillment of the **PURCHASE PRICE** by the LESSEE(s) shall be treated as a **CASH SALE**, at which time the LESSOR shall provide the LESSEE(s) with a good and sufficient deed, clear of all encumbrances, with exception to any/all encumbrances caused by the action or inaction, whether direct or indirect, of the LESSEE(s), and transfer title of the premises from the LESSOR to the LESSEE(s). This **CASH SALE** shall be documented by a separate instrument.

3. **OPTION TO FORFEIT LEASE:** LESSEE(s) may, on or before the expiration of this agreement, by mutual agreement between LESSOR and LESSEE(s), as evidenced in writing, choose to forfeit their rights to the premises described herein and vacate the premises and all appurtenances within FIVE (5) days of the determined expiration of this agreement. Should the LESSEE(s) choose to forfeit this agreement, all personal property and belongings shall be vacated within FIVE (5) days of the determined expiration of this agreement. Should the LESSEE(s) choose to vacate the premises, any and all improvements that have been built into the property, including but not limited to any/all built in appliances, shall remain with the property and become considered forfeit.

   a. **FAILURE TO VACATE PREMISES:** Should the LESSEE(s) fail to comply with the covenants of OPTION 3 (above), LESSOR shall have the right to evict LESSEE(s) according to the proper judicial process determined by the locality in which the premises is located.

   b. **PERSONAL PROPERTY:** Should the LESSEE(s) elect to choose OPTION 3 (above), any and all of LESSEE(s), their assigns, agents, acquaintances, and/or other personal property remaining in, around, or about the premises or its appurtenances shall be forfeit so far as the FIVE (5) day vacation period has expired.

   c. **CONDITION OF PREMISES:** LESSEE(s) agree that upon the execution of OPTION 3 (above), LESSEE(s) shall vacate premises in the same condition or better as of the execution of this agreement. LESSEE(s) acknowledge that should they vacate the premises in worse condition than at the time of execution of this agreement, any and all appropriate legal action may be sought by LESSOR for restitution.

## NON-PAYMENT, EVICTION, AND LATE FEE NOTIFICATION

LESSEE(s) acknowledges and understands that if the full amount of the monthly payment described herein has not been received by the end of **FIVE (5)** calendar days after the date it is due, a late charge in the amount of **TWENTY-FIVE DOLLARS AND NO CENTS ($25.00)** will become due, the total payment and penalty being the amount of **FIVE HUNDRED FORTY-FIVE DOLLARS AND NO CENTS ($545.00)**. Any late fee charged shall not be applied/assumed as credit towards the **PURCHASE PRICE.**

For each bad check there will be Thirty Dollars ($30.00) bad check fee applied.

LESSEE(s) acknowledges and understands that in the event of their failure to perform according to the covenants set forth herein, particularly, but not limited to, the full amount of the monthly payment described herein not being received by the end of FIFTEEN (15) calendar days after the date it is due, they may be placed in eviction in the pertinent Court of competent jurisdiction pertaining to the county in which the premises is located or other appropriate judicial process.

## AS IS/WHERE IS LEASE NOTIFICATION

LESSEE(s) acknowledges and understands that the premises referenced herein is LEASED in strictly "AS IS/WHERE IS" condition, and it is mutually agreed, by and between the parties hereto, that the LESSEE(s) is solely responsible for maintaining the premises in a safe and non-hazardous condition during the duration of this agreement, and for bringing the building and premises to a habitable condition, compliant with any and all State, County, and City building and premises codes, within a reasonable period of time not exceeding THREE (3) month(s) of the date of execution of this agreement, and maintaining the premises in a good state of repair during the term of this agreement.

**LESSEE(s) also hereby acknowledges and understands that the LESSEE(s), upon the execution of this agreement, may take possession of the premises referenced herein, but will not occupy or allow to be occupied the stated premises until the building and premises are brought to a habitable condition, compliant with any and all State, County, and City building and premises codes.**

LESSEE(s) also hereby acknowledges and understands that the LESSEE(s), upon the execution of this agreement, shall be immediately responsible for payment or alleviation of any encumbrances including, but not limited to, all taxes, assessments and/or impositions (includes such fees as ground rents, city/county miscellaneous fees as they require, property violations and/or fines levied, water/sewer charges, electrical/gas usage charges, garbage fees and property taxes levied, etc.) that may be legally levied or imposed upon said premises that are delinquent or currently due at the execution of this agreement without recourse.

## RIGHT TO INSPECT PREMISES

LESSOR, its employees or agents, shall have the right, after 24 hours of notice to the LESSEE(s), to enter and inspect the premises and all its appurtenances referenced in this agreement at reasonable times for the purpose of inspecting the performance of the LESSEE(s) pertaining to the terms and conditions of this agreement set forth herein. LESSEE(s) hereby agrees to and grants LESSOR such stated rights.

Upon inspection of the premises and all its appurtenances, should LESSOR deem that the terms and covenants of this agreement have not been fulfilled by the LESSEE(s), such as but not limited to maintenance, repair(s), or other reasonable grounds, LESSOR shall have the right to terminate this agreement immediately by written notice to the LESSEE(s), and should it require, the LESSEE(s) may be placed in eviction in the pertinent Court of competent jurisdiction pertaining to the county in which the premises is located or other appropriate judicial process. Such termination of this agreement does not entitle the LESSEE(s) to any payments made, whether towards the option consideration or not, to any refund whatsoever. LESSEE(s) hereby agrees to and grants LESSOR such stated rights.

## LESSEE'S RIGHT TO SUB-LEASE

If all the requirements and covenants of this agreement are in full effect, including but not limited to maintaining the premises in a safe and non-hazardous condition during the duration of this agreement, and for bringing the building and premises to a habitable condition, compliant with any and all State, County, and City building and premises codes, LESSEE(s) shall have the right to sub-lease the premises referenced herein upon the mutual agreement to sub-lease said premises, in writing, between the LESSEE(s) and LESSOR. This sub-lease and acknowledgment of sub-lease shall be documented by a separate instrument to be approved by the LESSOR in its sole discretion. LESSEE(s) hereby acknowledges and agrees that the requirements and conditions of this agreement shall take priority, including but not limited to the "AS IS/WHERE IS" clause, over any sub-lease agreement.

Prior to the execution of any sub-lease agreement, LESSEE(s) hereby acknowledges and agrees to provide LESSOR with appropriate contact information for the sub-lessee(s), including but not limited to phone number(s), email address, emergency contacts, and other information that may be required by the LESSOR prior to the execution of the sub-lease.

Upon the execution of any sub-lease between LESSEE(s) and sub-lessee(s), this agreement shall remain in full effect according to the provisions set-forth herein. Upon the event that the requirements and covenants set forth herein are not in full effect including, but not limited to non-payment, LESSEE(s) may be placed in eviction in the pertinent Court of competent jurisdiction pertaining to the county in which the premises is located or other appropriate judicial process, and LESSOR shall have the immediate right to convert the sub-lessee(s) to LESSEE(s) in the former LESSEE(s) stead. This conversion shall be documented by a separate instrument.

## INSURANCE NOTIFICATION

The LESSEE(s) will pay for Casualty and General Liability insurance as a part of their monthly payment. This fee is a Casualty and General Liability Insurance Policy and is not a replacement for renters insurance or other appropriate insurance to be obtained by the LESSEE(s). This policy only covers the LESSOR's liability in this property. Without renters insurance or other appropriate insurance, the LESSEE(s) will still be responsible for damage or loss of personal belongings.

The LESSEE(s) will notify the LESSOR immediately in the event of any significant damage to the property.

If the damage to the improvements on the Property is less than fifty (50%) percent of the total value of the improvements, the LESSEE(s) shall be obligated to repair or reconstruct said property. The LESSOR shall apply the proceeds directly to the costs of such repair or reconstruction. The LESSEE(s) shall be liable for any deficiency after application of the insurance money to such costs.

If the damage to the improvements on the Property is in excess of fifty (50%) percent of the total value of the improvements, the LESSEE(s) shall have the option as to whether to repair or reconstruct said property following such casualty loss.

If the LESSEE(s) elects not to repair or reconstruct said property, then the unpaid balance of the PURCHASE PRICE shall at the option of the LESSOR become due and payable forthwith, and the insurance proceeds shall be applied towards the application of such sum, any surplus of the insurance proceeds over and above the LESSEE(s) obligations shall be paid to the LESSEE(s). In the event that the agreement is paid out as a result of the application of the insurance proceeds, the LESSOR shall deliver a deed to the LESSEE(s) and consummate the transaction. In the event the contract is not paid out as a result of the application of the insurance process pursuant to an election not to repair or reconstruct said property after casualty, the proceeds shall be credited to the account of the LESSEE(s) and the LESSEE(s) will continue to make regular payments pursuant to the terms of the agreement until the LESSEE(s) obligations are satisfied and the agreement consummated.

If the LESSEE(s) elects to repair or reconstruct, the insurance proceeds shall be applied by the LESSOR to the costs of such repair or reconstruction, the LESSEE(s) shall submit the building plans to the LESSOR for approval, for which approval shall be granted if the value of the land after the repair or reconstruction will equal or exceed the value of the premises immediately prior to the casualty. If requested by the LESSEE(s), the LESSOR will, after approval of the LESSEE(s) building plans, turn over the insurance proceeds to an insurance trustee for the purpose of paying for the repairs or reconstruction.

Any surplus of insurance proceeds over and above the costs of repair or reconstruction shall be delivered to the LESSEE(s), and any deficiency remaining after application of such proceeds to the costs of repair or reconstruction shall be paid by the LESSEE(s).

*[signature(s) on the following page]*

IN WITNESS WHEREOF, The parties to these presents have hereunto set their hands and seals the day and year first above written.

**WITNESS**
(sign and print)

**ROBERTA LAVERNE FAULKS**
(sign and print) *Roberta Faulks*

**WITNESS**
(sign and print)

**LESSEE(s)**
(sign and print)

State of **MICHIGAN**

County of **Wayne**

On this, the **22** day of **April**, 2016, before me, a Notary Public for said State and County, personally appeared **Roberta Faulks** and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal

NOTARY PUBLIC FOR **MICHIGAN**
Printed Name: **H. M. Wright**
My commission expires **6 | 3 | 2022**. (SEAL)

H M WRIGHT
Notary Public - Michigan
Wayne County
My Commission Expires Jun 3, 2022
Acting in the County of **Wayne**

******************************************************************************

**WITNESS** Olivia Garrett
(sign and print)

**KAJA HOLDINGS 2, LLC**

BY **AUTHORIZED SIGNER**
(sign and print)

Steven Randall

State of South Carolina
County of **Lexington**

On this, the **25** day of **April**, 2016, before me, a Notary Public for said County, personally appeared **Steven Randall** and acknowledged the due execution of the foregoing instrument

Witness my hand and official seal

NOTARY PUBLIC FOR South Carolina
Printed Name: Bakari Lebby
My commission expires _____. (SEAL)

BAKARI LEBBY
Notary Public, State of South Carolina
y Commission Expires May 28, 2024

Page 5 of 9



## LEAD BASED PAINT RIDER AND RISK ASSESSMENT

RIDER TO AGREEMENT DATED the **15TH** day of **MAY, 2016** between the LESSEE(s) and LESSOR for property located at ████████████████, **INKSTER**, County of **WAYNE**, State of **MICHIGAN**.

The LESSOR and the LESSEE(s) agree that the following additions and/or modifications are hereby made to the above-referenced Contract.

1. AGREEMENT CONTINGENCY. Pursuant to Federal Regulations, the provisions of this Rider must be satisfied before the LESSEE(s) are obligated under this agreement.

2. LEAD WARNING STATEMENT. The LESSOR, as owner of an interest in residential real property on which a residential dwelling was built prior to 1978, is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduce intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The LESSOR, as owner of an interest in residential real property, is required to provide any LESSEE(s) with whom the LESSOR enter into an agreement with any information on lead-based paint hazards from risk assessments or inspections in the possession of the LESSOR and notify the LESSEE(s) of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

3. LEAD HAZARD INFORMATION PAMPHLET. The LESSOR shall deliver to the LESSEE(s) an EPA approved lead-hazard information pamphlet (For example, Protect Your Family From Lead In Your Home). Intact lead-based paint that is in good condition is not necessarily a hazard.

4. LESSOR's DISCLOSURE. (Check all applicable boxes).

(A) Presence of Lead-Based Paint and/or Lead Based Paint Hazards.

(Check either (1) or (2) below).

[ ] (1) Hazards Known. Attached hereto is a statement signed by the LESSOR disclosing the presence of known lead-based paint and/or lead-based hazards at the Property, including but not limited to the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards and the condition of the painted surfaces.

[x] (2) Hazards Unknown. The LESSOR has no actual knowledge of the presence of lead-based paint and/or lead-based paint hazards at the property.

(B) Records and Reports Available to LESSOR. (Check either (1) or (2) below).

[ ] (1) Records Provided. The following is a list of all records and/or reports available to the LESSOR pertaining to lead-based paint and/or lead-based paint hazards at the property.

_____

_____

The LESSOR shall deliver a complete copy of each record and report to the LESSEE(s).

[x] (2) No Records. The LESSOR has no records or reports pertaining to lead based paint and/or lead-based paint hazards at the Property.

Page 6 of 9

**5. RISK ASSESSMENT. (Mark with an X either (A) or (B) below.)**

[X] (A) LESSEE(s) hereby waive/waives the opportunity to conduct a lead-based paint hazard risk assessment or inspection.

**MARK
EITHER**

[ ] (B) This agreement is contingent upon a risk assessment or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards being obtained by the LESSEE(s) at the expense of the LESSEE(s) before 5:00 p.m. on the tenth calendar day after full execution of the agreement by all parties (the "Lead Paint Inspection Period"). If the results of such inspection are unacceptable to the LESSEE(s) for any reason whatsoever, the LESSEE(s) shall notify the LESSOR or the attorney of the LESSOR in writing within two business days after the end of the Lead Paint Inspection Period, together with a copy of the inspection and/or risk assessment report. In such case, either party may cancel the agreement upon written notice to the other party or the other party's attorney. If the notice of unacceptable results by the LESSEE(s) is not received by the LESSOR or the attorney of the LESSOR within two business days after the end of the Lead Paint Inspection Period, this Inspection contingency is deemed waived by the LESSEE(s). The definitions in Paragraph 1.B and C of Form 1.1 Contract Rider (1995) shall be used to determine whether or not the notice of unacceptable results by the LESSEE(s) has/have been received by the LESSOR before the end of the Lead Paint Inspection Period. The LESSOR will cooperate with the inspection made by the LESSEE(s) in such fashion as may be reasonably requested by the LESSEE(s). The LESSEE(s) may remove this contingency at any time without cause.

6. ACKNOWLEDGMENT BY THE LESSEE(s) (initial and date):

**INITIAL
HERE** → _____ Initial  _4/22/2016_ Date  LESSEE(s) has/have received copies of all information, records and/or reports set forth in Paragraph 4 of this Rider or attached to this Contract.

**INITIAL
HERE** → _____ Initial  _4/22/2016_ Date  LESSEE(s) has/have received an EPA approved lead hazard information pamphlet.

**INITIAL
HERE** → _____ Initial  _4/22/2016_ Date  LESSEE(s) has/have received a 10-day opportunity (or mutually agreed upon period) or has/have waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

*(signature(s) on the following page)*

Page 7 of 9

7. CERTIFICATION OF ACCURACY. The undersigned have reviewed the information above and certify to the best of their knowledge, that the statement they have provided is true and accurate.

Signed, sealed and delivered in the presence of:

KAJA HOLDINGS 2, LLC

WITNESS
(sign and print)
Olivia Garrett

BY AUTHORIZED SIGNER
(sign and print)
Steven Randall

******************************************************************************************

WITNESS
(sign and print)

SIGN HERE →

ROBERTA LAVERNE FAULKS
(sign and print) Roberta L. Faulks

SIGN HERE →

WITNESS
(sign and print)

LESSEE(s)
(sign and print)

State of **MICHIGAN**
County of Wayne

On this, the 22 day of April, 2016, before me, a Notary Public for said State and County, personally appeared Roberta Faulks and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal

NOTARY PUBLIC FOR MICHIGAN
Printed Name: H. M. Wright
My commission expires Jun 3, 2022 (SEAL)

H M WRIGHT
Notary Public - Michigan
Wayne County
My Commission Expires Jun 3, 2022
Acting in the County of Wayne

This Instrument Prepared by:

Vision Property Management, LLC
Amy Humphries
16 Berryhill Road, Suite 200
Columbia, SC 29210

## ATTACHMENT "A" TO THE RESIDENTIAL LEASE WITH OPTION TO PURCHASE AGREEMENT

(Dated the 15TH day of MAY, 2016, BETWEEN KAJA HOLDINGS 2, LLC and ROBERTA LAVERNE FAULKS)

### LEGAL DESCRIPTION

PARCEL ID NUMBER: ███████

# EXHIBIT C

Church LOP

## RESIDENTIAL LEASE WITH OPTION TO PURCHASE AGREEMENT

## (TRIPLE-NET, BONDABLE LEASE)

This **RESIDENTIAL LEASE WITH OPTION TO PURCHASE AGREEMENT** is entered into on this day 1st of October , 2015 between Kaja Holdings 2, LLC (hereinafter known as the "LESSOR") and Tyler Lee Sturgeon and Rachel Ann Church (hereinafter known as the "LESSEE(s)").

Witnesseth, that if the LESSEE(s) shall first make the payments and perform the covenants hereafter described, the LESSOR hereby covenant(s) and agree(s) to LEASE the property commonly known as ⬛⬛⬛⬛⬛⬛ , Mt. Morris, MI 48458 in the County of Genesee , the city of Mt. Morris , the State of Michigan , to the LESSEE(s) for the term and covenant(s) set forth herein, and further known and described as follows, to-wit:

### SEE ATTACHMENT "A" FOR LEGAL DESCRIPTION OF PROPERTY

The premises, as described above, with all appurtenances, are hereby LEASED to the LESSEE(s) for a term of 84 months. This LEASE shall commence the 1st of October , 2015 , and shall be paid, at the signing of this agreement, in the following manner: Three Thousand Dollars ( $3,000.00 ) as an option consideration, and Six Hundred Two Dollars ( $602.00 ) as the monthly lease payment, plus One Hundred Ninety Dollars ( $190.00 ) for real estate taxes (real estate taxes subject to change), Forty Dollars ( $40.00 ) for Casualty and General Liability Insurance (insurance premium subject to change), making the total initial payment Three Thousand Eight Hundred Thirty-two Dollars ( $3,832.00 ).

All subsequent monthly payments shall be due on or before the 1st day of each month, commencing on the 1st of November , 2015 until the term of this agreement has been fulfilled and shall be in the amount of Eight Hundred Thirty-two Dollars ( $832.00 ). This agreement expires on the last calendar day of November , 2022 . One Hundred Sixty-two and 73/100 Dollars ( $162.73 ) of each monthly lease payment, as well as the option consideration paid by the LESSEE(s) shall be credited towards the purchase price of the property. All credits are non-refundable.

The **PURCHASE PRICE** of the premises, as described above, will be Seventy-four Thousand Nine Hundred Dollars ( $74,900.00 ), to be satisfied on or before the expiration of this agreement, should the LESSEE(s) choose to exercise their rights to purchase as described hereinafter.

Upon the expiration of the term of this agreement or before, the LESSEE(s) shall have three options, to-wit:

1. **OPTION TO CONVERT TO SELLER FINANCING:** LESSEE(s) may, if all the requirements and covenants of this agreement have been fulfilled, either upon the expiration of this agreement, or upon the time the total credit(s) paid towards the **PURCHASE PRICE** reaches the amount of 30% of the **PURCHASE PRICE**, whichever comes first, this lease shall convert to a Seller Financed Contract. This conversion shall be documented by a separate instrument. The **PURCHASE PRICE** as set forth in the instrument documenting the conversion to Seller Financing shall be equivalent to the difference of the **PURCHASE PRICE** listed in this agreement minus any/all credit(s) paid towards said **PURCHASE PRICE**.

2. **OPTION TO PURCHASE PREMISES:** LESSEE(s) may, on or before the expiration of this agreement, choose to purchase the above referenced premises for the remainder of the **PURCHASE PRICE** as described above with all credits paid included. Fulfillment of the **PURCHASE PRICE** by the LESSEE(s) shall be treated as a **CASH SALE**, at which time the LESSOR shall provide the LESSEE(s) with a good and sufficient deed, clear of all encumbrances, with exception to any/all encumbrances caused by the action or inaction, whether direct or indirect, of the LESSEE(s), and transfer title of the premises from the LESSOR to the LESSEE(s). This **CASH SALE** shall be documented by a separate instrument.

3. **OPTION TO FORFEIT LEASE:** LESSEE(s) may, on or before the expiration of this agreement, by mutual agreement between LESSOR and LESSEE(s), as evidenced in writing, choose to forfeit their rights to the premises described herein and vacate the premises and all appurtenances within FIVE (5) days of the determined expiration of this agreement. Should the LESSEE(s) choose to forfeit this agreement, all personal property and belongings shall be vacated within FIVE (5) days of the determined expiration of this agreement. Should the LESSEE(s) choose to vacate the premises, any and all improvements that have been built into the property, including but not limited to any/all built in appliances, shall remain with the property and become considered forfeit.

Page **1** of 9

a. **FAILURE TO VACATE PREMISES:** Should the LESSEE(s) fail to comply with the covenants of OPTION 3 (above), LESSOR shall have the right to evict LESSEE(s) according to the proper judicial process determined by the locality in which the premises is located.

b. **PERSONAL PROPERTY:** Should the LESSEE(s) elect to choose OPTION 3 (above), any and all of LESSEE(s), their assigns, agents, acquaintances, and/or other personal property remaining in, around, or about the premises or its appurtenances shall be forfeit so far as the FIVE (5) day vacation period has expired.

c. **CONDITION OF PREMISES:** LESSEE(s) agree that upon the execution of OPTION 3 (above), LESSEE(s) shall vacate premises in the same condition or better as of the execution of this agreement. LESSEE(s) acknowledge that should they vacate the premises in worse condition than at the time of execution of this agreement, any and all appropriate legal action may be sought by LESSOR for restitution.

## NON-PAYMENT, EVICTION, AND LATE FEE NOTIFICATION

LESSEE(s) acknowledges and understands that if the full amount of the monthly payment described herein has not been received by the end of **Five (5)** calendar days after the date it is due, a late charge in the amount of Seventy-five Dollars ( $75.00 ) will become due, the total payment and penalty being the amount of Nine Hundred Seven Dollars ( $907.00 ). Any late fee charged shall not be applied/assumed as credit towards the **PURCHASE PRICE**.

For each bad check there will be Thirty Dollars ($30.00) bad check fee applied.

LESSEE(s) acknowledges and understands that in the event of their failure to perform according to the covenants set forth herein, particularly, but not limited to, the full amount of the monthly payment described herein not being received by the end of FIFTEEN (15) calendar days after the date it is due, they may be placed in eviction in the pertinent Court of competent jurisdiction pertaining to the county in which the premises is located or other appropriate judicial process.

## AS IS/WHERE IS LEASE NOTIFICATION

LESSEE(s) acknowledges and understands that the premises referenced herein is LEASED in strictly "AS IS/WHERE IS" condition, and it is mutually agreed, by and between the parties hereto, that the LESSEE(s) is solely responsible for maintaining the premises in a safe and non-hazardous condition during the duration of this agreement, and for bringing the building and premises to a habitable condition, compliant with any and all State, County, and City building and premises codes, within a reasonable period of time not exceeding ( January 1st, 2016 ), and maintaining the premises in a good state of repair during the term of this agreement.

**LESSEE(s) also hereby acknowledges and understands that the LESSEE(s), upon the execution of this agreement, may take possession of the premises referenced herein, but will not occupy or allow to be occupied the stated premises until the building and premises are brought to a habitable condition, compliant with any and all State, County, and City building and premises codes.**

**LESSEE(s) also hereby acknowledges and understands that the LESSEE(s), upon the execution of this agreement, shall be immediately responsible for payment or alleviation of any encumbrances including, but not limited to, all taxes, assessments and/or impositions (includes such fees as ground rents, city/county miscellaneous fees as they require, property violations and/or fines levied, water/sewer charges, electrical/gas usage charges, garbage fees and property taxes levied, etc.) that may be legally levied or imposed upon said premises that are delinquent or currently due at the execution of this agreement without recourse.**

## RIGHT TO INSPECT PREMISES

LESSOR, its employees or agents, shall have the right, after 24 hours of notice to the LESSEE(s), to enter and inspect the premises and all its appurtenances referenced in this agreement at reasonable times for the purpose of inspecting the performance of the LESSEE(s) pertaining to the terms and conditions of this agreement set forth herein. LESSEE(s) hereby agrees to and grants LESSOR such stated rights.

Upon inspection of the premises and all its appurtenances, should LESSOR deem that the terms and covenants of this agreement have not been fulfilled by the LESSEE(s), such as but not limited to maintenance, repair(s), or other reasonable grounds, LESSOR shall have the right to terminate this agreement immediately by written notice to the LESSEE(s), and should it require, the LESSEE(s) may be placed in eviction in the pertinent Court of competent jurisdiction pertaining to the county in which the premises is located or other appropriate judicial process. Such termination of this agreement does not entitle the LESSEE(s) to any payments made, whether towards the option consideration or not, to any refund whatsoever. LESSEE(s) hereby agrees to and grants LESSOR such stated rights.

## LESSEE'S RIGHT TO SUB-LEASE

If all the requirements and covenants of this agreement are in full effect, including but not limited to maintaining the premises in a safe and non-hazardous condition during the duration of this agreement, and for bringing the building and premises to a habitable condition, compliant with any and all State, County, and City building and premises codes, LESSEE(s) shall have the right to sub-lease the premises referenced herein upon the mutual agreement to sub-lease said premises, in writing, between the LESSEE(s) and LESSOR. This sub-lease and acknowledgment of sub-lease shall be documented by a separate instrument to be approved by the LESSOR in its sole discretion. LESSEE(s) hereby acknowledges and agrees that the requirements and conditions of this agreement shall take priority, including but not limited to the "AS IS/WHERE IS" clause, over any sub-lease agreement.

Prior to the execution of any sub-lease agreement, LESSEE(s) hereby acknowledges and agrees to provide LESSOR with appropriate contact information for the sub-lessee(s), including but not limited to phone number(s), email address, emergency contacts, and other information that may be required by the LESSOR prior to the execution of the sub-lease.

Upon the execution of any sub-lease between LESSEE(s) and sub-lessee(s), this agreement shall remain in full effect according to the provisions set-forth herein. Upon the event that the requirements and covenants set forth herein are not in full effect including, but not limited to non-payment, LESSEE(s) may be placed in eviction in the pertinent Court of competent jurisdiction pertaining to the county in which the premises is located or other appropriate judicial process, and LESSOR shall have the immediate right to convert the sub-lessee(s) to LESSEE(s) in the former LESSEE(s) stead. This conversion shall be documented by a separate instrument.

## INSURANCE NOTIFICATION

The LESSEE(s) will pay for Casualty and General Liability insurance as a part of their monthly payment. This fee is a Casualty and General Liability Insurance Policy and is not a replacement for renters insurance or other appropriate insurance to be obtained by the LESSEE(s). This policy only covers the LESSOR's liability in this property. Without renters insurance or other appropriate insurance, the LESSEE(s) will still be responsible for damage or loss of personal belongings.

The LESSEE(s) will notify the LESSOR immediately in the event of any significant damage to the property.

If the damage to the improvements on the Property is less than fifty (50%) percent of the total value of the improvements,

Page **3** of **9**

the LESSEE(s) shall be obligated to repair or reconstruct said property. The LESSOR shall apply the proceeds directly to the costs of such repair or reconstruction. The LESSEE(s) shall be liable for any deficiency after application of the insurance money to such costs.

If the damage to the improvements on the Property is in excess of fifty (50%) percent of the total value of the improvements, the LESSEE(s) shall have the option as to whether to repair or reconstruct said property following such casualty loss.

If the LESSEE(s) elects not to repair or reconstruct said property, then the unpaid balance of the PURCHASE PRICE shall at the option of the LESSOR become due and payable forthwith, and the insurance proceeds shall be applied towards the application of such sum, any surplus of the insurance proceeds over and above the LESSEE(s) obligations shall be paid to the LESSEE(s). In the event that the agreement is paid out as a result of the application of the insurance proceeds, the LESSOR shall deliver a deed to the LESSEE(s) and consummate the transaction. In the event the contract is not paid out as a result of the application of the insurance process pursuant to an election not to repair or reconstruct said property after casualty, the proceeds shall be credited to the account of the LESSEE(s) and the LESSEE(s) will continue to make regular payments pursuant to the terms of the agreement until the LESSEE(s) obligations are satisfied and the agreement consummated.

If the LESSEE(s) elects to repair or reconstruct, the insurance proceeds shall be applied by the LESSOR to the costs of such repair or reconstruction, the LESSEE(s) shall submit the building plans to the LESSOR for approval, for which approval shall be granted if the value of the land after the repair or reconstruction will equal or exceed the value of the premises immediately prior to the casualty. If requested by the LESSEE(s), the LESSOR will, after approval of the LESSEE(s) building plans, turn over the insurance proceeds to an insurance trustee for the purpose of paying for the repairs or reconstruction.

Any surplus of insurance proceeds over and above the costs of repair or reconstruction shall be delivered to the LESSEE(s), and any deficiency remaining after application of such proceeds to the costs of repair or reconstruction shall be paid by the LESSEE(s).

**[signature(s) on the following page]**

Page **4** of **9**

IN WITNESS WHEREOF, The parties to these presents have hereunto set their hands and seals the day and year first above written.

_Bonnie J Hall_
**WITNESS**
(sign and print)

_Bonnie J Hall_

**SIGN HERE** →  _Tyler L Sturgeon_    Tyler Sturgeon
Tyler Lee Sturgeon
(sign and print)

_Bonnie J Hall_
**WITNESS**
(sign and print)

**SIGN HERE** →  _Rachel A. Church_    Rachel A Church
Rachel Ann Church
(sign and print)

State of Michigan

County of _Genesee_

On this, the ___9___ day of ___10___, 2015, before me, a Notary Public for said State and County, personally appeared
_____ and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal

_Bonnie J Hall_
NOTARY PUBLIC FOR Michigan
Printed Name: _Genesee_
My commission expires ___3/29/2020___ [SEAL]

> BONNIE J HALL
> NOTARY PUBLIC - STATE OF MICHIGAN
> COUNTY OF GENESEE
> My Commission Expires March 29, 2020
> Acting in the County of _Genesee_

*************************************************************************************

**Kaja Holdings 2, LLC**

_Jacob Evans_
**WITNESS**
(sign and print)    **Jacob Evans**

_Steven Randall_
**BY AUTHORIZED SIGNER**
(sign and print)    Steven Randall

State of South Carolina
County of _Lexington_

On this, the ___14___ day of _September_, 2015, before me, a Notary Public for said State and County, personally appeared
_Steven Randall_ _____ and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal

_Ashly Evans_
NOTARY PUBLIC FOR South Carolina
Printed Name: _Ashly L Evans_
My commission expires _____ (SEAL)

> ASHLY L EVANS
> Notary Public, South Carolina
> My Commission Expires
> June 10, 2024

**Page 5 of 9**

## LEAD BASED PAINT RIDER AND RISK ASSESSMENT

RIDER TO AGREEMENT DATED the **1st** day of **October, 2015** between the LESSEE(s) and LESSOR for property located at ▮▮▮▮▮▮▮▮▮▮▮▮, **Mt. Morris, MI 48458, Mt. Morris,** County of **Genesee,** State of **Michigan.**

The LESSOR and the LESSEE(s) agree that the following additions and/or modifications are hereby made to the above-referenced Contract.

1. AGREEMENT CONTINGENCY. Pursuant to Federal Regulations, the provisions of this Rider must be satisfied before the LESSEE(s) are obligated under this agreement.

2. LEAD WARNING STATEMENT. The LESSOR, as owner of an interest in residential real property on which a residential dwelling was built prior to 1978, is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduce intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The LESSOR, as owner of an interest in residential real property, is required to provide any LESSEE(s) with whom the LESSOR enter into an agreement with any information on lead-based paint hazards from risk assessments or inspections in the possession of the LESSOR and notify the LESSEE(s) of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

3. LEAD HAZARD INFORMATION PAMPHLET. The LESSOR shall deliver to the LESSEE(s) an EPA approved lead-hazard information pamphlet (For example, Protect Your Family From Lead In Your Home). Intact lead-based paint that is in good condition is not necessarily a hazard.

4. LESSOR's DISCLOSURE. (Check all applicable boxes).

(A) Presence of Lead-Based Paint and/or Lead Based Paint Hazards.

(Check either (1) or (2) below).

[ ] (1) Hazards Known. Attached hereto is a statement signed by the LESSOR disclosing the presence of known lead-based paint and/or lead-based hazards at the Property, including but not limited to the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards and the condition of the painted surfaces.

[X] (2) Hazards Unknown. The LESSOR has no actual knowledge of the presence of lead-based paint and/or lead-based paint hazards at the property.

(B) Records and Reports Available to LESSOR. (Check either (1) or (2) below).

[ ] (1) Records Provided. The following is a list of all records and/or reports available to the LESSOR pertaining to lead-based paint and/or lead-based paint hazards at the property.

_____

_____

The LESSOR shall deliver a complete copy of each record and report to the LESSEE(s).

[X] (2) No Records. The LESSOR has no records or reports pertaining to lead based paint and/or lead-based paint hazards at the Property.

5. RISK ASSESSMENT. (Mark with an X either (A) or (B) below.)

(A) LESSEE(s) hereby waive/waives the opportunity to conduct a lead-based paint hazard risk assessment or inspection.

**MARK
EITHER**

[ ] (B) This agreement is contingent upon a risk assessment or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards being obtained by the LESSEE(s) at the expense of the LESSEE(s) before 5:00 p.m. on the tenth calendar day after full execution of the agreement by all parties (the "Lead Paint Inspection Period"). If the results of such inspection are unacceptable to the LESSEE(s) for any reason whatsoever, the LESSEE(s) shall notify the LESSOR or the attorney of the LESSOR in writing within two business days after the end of the Lead Paint Inspection Period, together with a copy of the inspection and/or risk assessment report. In such case, either party may cancel the agreement upon written notice to the other party or the other party's attorney. If the notice of unacceptable results by the LESSEE(s) is not received by the LESSOR or the attorney of the LESSOR within two business days after the end of the Lead Paint Inspection Period, this Inspection contingency is deemed waived by the LESSEE(s). The definitions in Paragraph 1.B and C of Form 1.1 Contract Rider (1995) shall be used to determine whether or not the notice of unacceptable results by the LESSEE(s) has/have been received by the LESSOR before the end of the Lead Paint Inspection Period. The LESSOR will cooperate with the inspection made by the LESSEE(s) in such fashion as may be reasonably requested by the LESSEE(s). The LESSEE(s) may remove this contingency at any time without cause.

6. ACKNOWLEDGMENT BY THE LESSEE(s) (initial and date):

 INITIAL HERE → TLS   9/10/15
Initial   Date

LESSEE(s) has/have received
copies of all information, records and/or reports set forth in Paragraph 4 of this Rider or attached to this Contract.

INITIAL HERE → TLS   9/10/15
Initial   Date

LESSEE(s) has/have received
an EPA approved lead hazard information pamphlet.

INITIAL HERE → TLS   9/10/15
Initial   Date

LESSEE(s) has/have received
a 10-day opportunity (or mutually agreed upon period) or has/have waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

(signature(s) on the following page)

Page 7 of 9

7. CERTIFICATION OF ACCURACY. The undersigned have reviewed the information above and certify to the best of their knowledge, that the statement they have provided is true and accurate.

Signed, sealed and delivered in the presence of:

Kaja Holdings 2, LLC

WITNESS
(sign and print)

Jacob Evans

BY AUTHORIZED SIGNER
(sign and print)

Steven Randall

*******************************************************************************************

WITNESS
(sign and print)

SIGN HERE →
Tyler Lee Sturgeon
(sign and print)

SIGN HERE →
Rachel Ann Church
(sign and print)

WITNESS
(sign and print)

State of Michigan
County of Genesee

On this, the 9 day of 10 B&H , 2015, before me, a Notary Public for said State and County, personally appeared _____ and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal

NOTARY PUBLIC FOR Michigan
Printed Name: Bonnie J Hall
My commission expires 3/29/2020 (SEAL)

This Instrument Prepared by:

Vision Property Management, LLC
Amanda Furstenberg
16 Berryhill Road
Columbia, SC 29210

## ATTACHMENT "A" TO THE RESIDENTIAL LEASE WITH OPTION TO PURCHASE AGREEMENT

(Dated the 1st day of October, 2015, BETWEEN Kaja Holdings 2, LLC and Tyler Lee Sturgeon and Rachel Ann Church)

### HOUSE AND LOT COMMONLY KNOWN AS

███████████████ , Mt. Morris, MI 48458, in the City of Mt. Morris, County of Genesee, and State of Michigan

PARCEL ID NUMBER: ███████████

Page **9** of **9**