UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA HENDERSON; ROBERTA
FAULKS; and RACHEL CHURCH on
behalf of themselves and all others
similarly situated,

                                            Case No. 2:20-cv-12649
                                            Hon. Sean F. Cox
                                            Mag. Judge R. Steven Whalen

          Plaintiffs,

vs.

VISION PROPERTY MANAGEMENT, LLC,
VPM HOLDINGS, LLC, FTE NETWORKS, INC.,
US HOME RENTALS, LLC, KAJA HOLDINGS,
LLC, KAJA HOLDINGS 2, LLC, MI SEVEN, LLC,
IN SEVEN, LLC, RVFM 4 SERIES, LLC, ACM
VISION V, LLC, ACP ROADMASTER, LLC, ACP
NASH, LLC, ACP MP INVESTMENTS, LLC, DSV
SPV 1, LLC, DSV SPV 2, LLC, DSV SPV 3, LLC,
BOOM SC, ALAN INVESTMENS III, LLC,
ARNOSA GROUP, LLC, ARNOSA HOMES LLC,
MOM HAVEN 13, LP, ATALAYA CAPITAL
MANAGEMENT LP, ANTONI SZKARADEK,
and ALEX SZKARADEK,

          Defendants.

_____

**SECOND MOTION TO DISMISS ON BEHALF OF DEFENDANTS
ATALAYA CAPITAL MANAGEMENT LP AND ACM VISION V, LLC**

          Defendants Atalaya Capital Management LP ("Atalaya") and ACM Vision V,

LLC ("ACMV"), by their attorneys Brooks Wilkins Sharkey & Turco PLLC,

pursuant to Fed.R.Civ.P. 12(b)(6), hereby move to dismiss Plaintiffs' First Amended

Complaint ("FAC") as to them, with prejudice, and with costs and attorneys' fees to be awarded as allowed by law.

Pursuant to L.R. 7.1, the relief requested in this Motion was addressed to counsel for Plaintiffs, both with the original complaint and then the FAC, but concurrence was denied on February 3, 2021, thus necessitating this Motion. The complete grounds for this Motion are set forth in the Brief in Support set forth below.

WHEREFORE, Atalaya and ACMV respectfully request that the Court dismiss Plaintiffs' First Amended Complaint as to them, with prejudice, and award these Defendants all costs and attorneys' fees as allowed by law.

By:  /s/ *Keefe A. Brooks*
BROOKS WILKINS SHARKEY & TURCO PLLC
*Attorneys for Defendants Atalaya and ACMV Only*
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
248-971-1800
brooks@bwst-law.com
P31680

DATED: February 9, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA HENDERSON; ROBERTA
FAULKS; and RACHEL CHURCH on
behalf of themselves and all others
similarly situated,

        Plaintiffs,

vs.

VISION PROPERTY MANAGEMENT, LLC,
VPM HOLDINGS, LLC, FTE NETWORKS, INC.,
US HOME RENTALS, LLC, KAJA HOLDINGS,
LLC, KAJA HOLDINGS 2, LLC, MI SEVEN, LLC,
IN SEVEN, LLC, RVFM 4 SERIES, LLC, ACM
VISION V, LLC, ACP ROADMASTER, LLC, ACP
NASH, LLC, ACP MP INVESTMENTS, LLC, DSV
SPV 1, LLC, DSV SPV 2, LLC, DSV SPV 3, LLC,
BOOM SC, ALAN INVESTMENS III, LLC,
ARNOSA GROUP, LLC, ARNOSA HOMES LLC,
MOM HAVEN 13, LP, ATALAYA CAPITAL
MANAGEMENT LP, ANTONI SZKARADEK,
and ALEX SZKARADEK,

        Defendants.

Case No. 2:20-cv-12649
Hon. Sean F. Cox
Mag. Judge R. Steven Whalen

---

**BRIEF IN SUPPORT OF SECOND MOTION TO DISMISS ON BEHALF
OF DEFENDANTS ATALAYA CAPITAL MANAGEMENT LP AND ACM
VISION V, LLC**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.....................................................................iii

ISSUE PRESENTED ....................................................................... iv

MOST APPROPRIATE AUTHORITIES ................................................. iv

INTRODUCTION - THE DEFICIENT AMENDED COMPLAINT ......................1

   THE IMPROPER USE OF THE NEW YORK ASSURANCE OF
   DISCONTINUANCE ........................................................................4

   THE FAC CONTAINS NO ALLEGATIONS OF FACT CONNECTING
   MOVANTS WITH PLAINTIFFS, NOR ANY ALLEGATIONS OF FACT
   REGARDING MOVANTS ENGAGING IN ANY FORM OF RACIAL
   DISCRIMINATION ........................................................................6

      The FAC Contains No Allegations Regarding any relationship between
      movants and the Plaintiffs...............................................................7

      The FAC contains no allegations of fact that could support a finding of
      racial discrimination.......................................................................7

STANDARD OF REVIEW ..................................................................9

   PLAINTIFFS STATE NO PLAUSIBLE CLAIM AGAINST MOVANTS
   FOR VIOLATION OF THE FAIR HOUSING ACT ...........................11

   PLAINTIFFS STATE NO PLAUSIBLE CLAIM AGAINST MOVANTS
   FOR VIOLATION OF THE EQUAL OPPORTUNITY ACT ............................13

   ACMV AND ATALAYA ARE ENTITLED TO DISMISSAL WITH
   PREJUDICE ...................................................................................15

CONCLUSION AND RELIEF REQUESTED ..........................................17

# INDEX OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 S.Ct. 1937, 173 L. Ed. 2d 868 (2009) .......... iv, 9-10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................................................................ iv, 9-10

*Conley v. Gibson*, 355 U.S. 41, S. Ct. 99, 2 L. Ed. 2d. 80 (1957) ............................ 9

*Havenick v. Network Exp., Inc.*, 981 F. Supp. 480 (E.D. Mich. 1997) .............. iv, 11

*Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389 (6th Cir. 1998) ........................... iv, 13

*Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 799 F. Supp. 695 (E.D. Mich. 1992), aff'd, 18 F.3d 337 (6th Cir. 1994) ............................................................ 12

*Rodriguez v. Honigman Miller Schwartz & Cohn LLP*, 465 Fed. Appx. 504 (6th Cir. 2012) ......................................................................................................... 10

*S & G Petroleum Co. v. Brice Capital Corp.,* No. CIV. A. 92-5078, 1993 WL 497859 (E.D. Pa. Dec. 2, 1993) ................................................................................. 15

*Soo Line Railroad Company v. St. Louis Southwestern Railroad Company*, 125 F.3d 481 (7th Cir. 1997) ............................................................................... 11

## Statutes

12 C.F.R. § 202.2 .................................................................................................... 14
15 U.S.C. §§1691 ......................................................................................... passim
42 U.S.C. §§ 3601 ....................................................................................... passim
42 U.S.C. 3613 ................................................................................................ 16-17

## Rules

Fed.R.Civ.P. 12 ........................................................................................................ 9
Fed.R.Civ.P. 8 .......................................................................................................... 9
L.R. 7.1 .................................................................................................................... 17

## ISSUE PRESENTED

Where the FAC contains no allegations regarding any nexus between any of the Plaintiffs and the moving Defendants that could plausibly give rise to liability on the part of movants under any of the claims in the FAC, and the movants have been wrongfully accused of engaging in an alleged racially motivated scheme of others, should the FAC be dismissed against movants with prejudice, and should movants be awarded all costs and attorneys' fees incurred in having to bring this second motion to dismiss?

## MOST APPROPRIATE AUTHORITIES

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)

*Havenick v. Network Exp., Inc.*, 981 F. Supp. 480, 510 (E.D. Mich. 1997)

*Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998)

## INTRODUCTION - THE DEFICIENT AMENDED COMPLAINT

On September 29, 2020, the three Plaintiffs filed a 109-page, 400 paragraph complaint against 24 Defendants. Styled as a "civil rights" action against defendant Vision Property Management ("Vision" or "VPM") and "related entities" (which do **not** include Atalaya) (Complaint, introductory paragraph), Plaintiffs attempted to plead 9 Counts against 24 named defendants. On October 7, 2020, this Court *sua sponte* dismissed all state law claims without prejudice. ECF 10.

On January 6, 2021, movants filed their first Motion to Dismiss. ECF 70. Two days later, the Court issued an Order permitting Plaintiffs the choice of either responding to the motion or filing an amended complaint within 21 days of the date of that Order. ECF 72. On the evening of January 29, the last day on which Plaintiffs could comply with the Court's Order, Plaintiffs filed their 108-page, 384 paragraph FAC. ECF 77.

According to the FAC, Vision and its affiliated entities engaged in certain racially motivated, predatory, unlawful lending/real estate transactions with the Plaintiffs and others. Further according to the FAC, Vision and its parent, VPM Holdings, "conducted **all** the property acquisition, management, rental, and sale activities, and **all** interaction with consumers and contracting activities relating to the Visions homes." (FAC, ¶14).[1] The FAC then identifies in paragraph 15 the

---

[1] Emphasis added throughout unless otherwise noted.

parties referred to throughout as the "Affiliate Defendants." Notably, Atalaya is ***not*** included in the list of "Affiliate Defendants." And in paragraph 19 of the FAC, Plaintiffs allege that Vision, VPM Holdings and all of the "Affiliate Defendants" acted "in concert with each other to carry out the practices described in this Complaint." Once again, Atalaya is ***not*** included in that conclusory allegation of the alleged 'concerted action' by which all of the "practices described in this Complaint" were carried out.

There are three Plaintiffs in this case. Their "alleged experiences" giving rise to their claims are described in great detail in the FAC.

The alleged "experiences" of Plaintiff Rhonda Henderson are described in detail in paragraphs 171-204 of the FAC. Neither Atalaya nor ACMV are ever mentioned in any of those allegations. Indeed the allegations make it clear that Ms. Henderson is still in her home and doing business with Vision (or a successor to same), and as noted below, Atalaya ceased doing business with Vision in 2017.

The alleged "experiences" of Plaintiff Roberta Faulks are described in detail in paragraphs 205-237 of the FAC. Neither Atalaya nor ACMV are ever mentioned in any of those allegations. Additionally, like Ms. Henderson, Ms. Faulks appears to still be living in her home and doing business with Vision (or its successor) at this time.

Finally, the alleged "experiences" of Plaintiff Rachel Church are described in detail in paragraphs 238-272 of the FAC. Once again, neither Atalaya nor ACMV are ever mentioned in any of those allegations. More remarkable, paragraph 238 alleges that Ms. Church is a "34-year-old *white* woman" living in Mt. Morris, Michigan. Yet the first sentence of the very first paragraph of the FAC states: "This action arises out of Vision's discriminatory targeting of Black homebuyers for abusive credit terms in home purchase transactions." Since Plaintiffs are claiming alleged racial discrimination in their only claims against Atalaya and ACMV, movants presume that Ms. Church is asserting no claim against them in the FAC.[2]

Atalaya and ACMV are introduced in paragraphs 33-36 of the FAC. Atalaya is now correctly identified as a Delaware limited partnership that does *not* do business in Michigan.[3] ACMV is correctly identified as a Delaware limited liability company registered to do business in Michigan. In essence, these paragraphs recite

---

[2] It is nevertheless noteworthy that one of the three Plaintiffs is a white homeowner from Mt. Morris, which seems to run counter to the alleged scheme being the "targeting of Black homeowners in Detroit."

[3] The original complaint falsely claimed that Vision was a Cayman Island entity. While Plaintiffs have corrected that false allegation in the FAC, they now falsely claim that Atalaya is a "hedge fund worth $5 billion." FAC ¶130. As pointed out in the original motion to dismiss, Atalaya is an SEC registered investment advisor. It invests the assets of *others* (e.g., The Rhode Island Public Employees' pension fund and the like). Atalaya's *assets under management* is approximately $5 billion; hardly a number that would make fund manager "worth" that sum.

that Atalaya was one of Vision's lenders, and that ACMV held title to some properties acquired by Vision.

The original complaint contained no specific allegations regarding either Atalaya or ACMV. Hence the initial motion to dismiss. In response, Plaintiffs inserted a new section in paragraphs 128-154 of the FAC titled "Role and Involvement of Atalaya and ACM Vision V". Although not provided to the Court or even properly identified, these allegations come from  a consent "Assurance of Discontinuance" entered into by Atalaya and ACMV with the Office of the Attorney General of the State of New York and the New York Department of Financial Services in 2019, which document was identified to the Court in the original motion to dismiss. The complete document is found here.[4]

## THE IMPROPER USE OF THE NEW YORK ASSURANCE OF DISCONTINUANCE

In August of 2019, following a two-year long investigation regarding Vision's operations, Atalaya and ACMV entered into a consent Assurance of Discontinuation, to confirm that they were no longer doing business with Vision and would not do so in the future. As a negotiated resolution, and not as the result of any proceedings, the Assurance not surprisingly provides:

**71.    This Assurance is not intended for use by any third party in any other proceeding. There are no third-party beneficiaries to this Assurance.**

---

[4] https://www.dfs.ny.gov/system/files/documents/2019/08/ea190827_atalaya.pdf.

The above notwithstanding, Plaintiffs inappropriately quote liberally from the Assurance, referring repeatedly to the "New York findings" in the FAC. (See particularly paragraphs 137-144, all of which begin: "According to the New York findings…"). Thus Plaintiffs' allegations regarding the "role and involvement" of Atalaya and ACMV are ***all*** drawn from a consent document that ***expressly*** provides that it is ***not to be used by any third party in any other proceeding.*** All of Plaintiffs' references to the so-called "New York findings" and other allegations bottomed on the Assurance should be completely disregarded.[5]

_____

[5] The misuse of the Assurance of Discontinuance in this fashion has very important policy implications. If private litigants can use consent resolutions – even consent resolutions that expressly forbid use by others in any other proceeding – there would be little incentive to sit down and resolve disputes with regulators in any setting. This Court may recall the consent decree it entered in the matter where the undersigned negotiated a consent decree on behalf of the University of Michigan when the civil rights division of the Justice Department claimed that the University's football stadium was in violation of the Americans with Disabilities Act. The University entered into that consent decree, not because it believed its stadium, constructed in 1930, was in violation of the ADA. It entered into that consent decree because it chose to work with the government to make the stadium more user friendly to mobility impaired patrons. But if by entering into that consent decree the University would have been opening itself up to suits by private litigants trying to use the contents of the consent decree as "evidence" of violation of the ADA, there would have been little if any incentive to sit down with the DOJ and resolve the matter as it did. And this case raises an even greater concern in that regard, as the New York consent resolution and the so-called "findings" have absolutely nothing to do with any alleged "racial discrimination" - yet Plaintiffs selectively paraphrase from those "findings" to insert claims of targeting minorities –  a concept that appears nowhere in the Assurance.

But assuming arguendo it is permissible, if not instructive, to look at the "New York findings", these "findings" only serve to underscore the impropriety of trying to morph them into some sort of civil rights claim, or to recast the deceptive trade practices of Vision as the targeting of some racial minority. As noted in paragraph 24 of the Assurance, that investigation concerned 110 transactions in "central and upstate New York." And the "findings" go on to recite in paragraph 26 that as soon as Atalaya read about Vision's questionable business practices in January of 2017, "it immediately pulled back from, and shortly thereafter fully ceased funding, new vision transactions."[6]

These "findings" do go on to say that Atalaya knew "or should have known" about Vision's lack of compliance with New York consumer protection laws. That is why Plaintiffs in this case parrot the "knew or should have known" verbiage in the FAC. But what should be abundantly clear from everything in the Assurance – it had absolutely nothing to do with alleged targeting of minorities or any other racial component of any kind or nature.

**THE FAC CONTAINS NO ALLEGATIONS OF FACT CONNECTING MOVANTS WITH PLAINTIFFS, NOR ANY ALLEGATIONS OF FACT REGARDING MOVANTS ENGAGING IN ANY FORM OF RACIAL DISCRIMINATION**

---

[6] In light of Atalaya's cessation of lending to Vision in early 2017, and that this case was not filed until the fall of 2020, it is difficult to understand how any of Plaintiffs' claims are not barred by the two-year statute of limitations in the Fair Housing Act.

**The FAC Contains No Allegations Regarding any relationship between movants and the Plaintiffs.**

The FAC, for all its girth, never connects the dots as between Plaintiffs and movants. As noted above, the detailed allegations of all three Plaintiffs never mention Atalaya or ACMV. On the contrary, according to their own pleadings, their transactions were all with Vision or a Vision affiliate.

Further, there is not even an allegation that any funds provided by Atalaya were used by Vision in connection with any transaction with any of the three Plaintiffs. Vision had multiple sources of capital, before, during, and after Atalaya ceased lending to Vision in January of 2017. Finally, there is no allegation that ACMV ever held title to, or was otherwise involved with, any of the homes purchased by any of the Plaintiffs. The FAC simply draws no nexus between the general business relationships at issue, and their particular complaints about Vision.

**The FAC contains no allegations of fact that could support a finding of racial discrimination.**

There are two federal claims in this case that remain against movants, Counts I and II. Both are claims for racial discrimination. Other than "information and belief" allegations, there is nothing in the 384-paragraph FAC that states a claim for racial discrimination against Atalaya or ACMV.

By Plaintiffs' own allegations, all of the transactions were conducted by Vision and its parent Vision Holdings. There is no allegation – and could be no

allegation – that either Atalaya or ACMV even knew anything about historical housing patterns in SE Michigan, let alone that Vision allegedly targeted homeowners in those areas, or that they targeted homeowners of any particular race. Indeed, Atalaya targeted no one, as all it did was serve as a financing source to Vision for a period of time.

In Count I of the FAC, Plaintiffs claim violation of the Fair Housing Act, 42 U.S.C. §§ 3601 et. seq.  As to ACMV, Plaintiffs continue to use group pleading and simply lump it in with what they define as Affiliate Defendants. And as to Atalaya, Plaintiffs continue their information and belief, and knew or should have known, allegations regarding the allegations of Vision engaging in discriminatory practices. These allegations fall far short of stating a plausible claim against Atalaya or ACMV for violation of the Fair Housing Act.

Count II fairs no better. It is for allegation violation of the Equal Credit Opportunity Act, 15 U.S.C. §§1691 et seq. As alleged by Plaintiffs, that Act prohibits discrimination based on race in entering into a credit transaction. There is no allegation in the FAC – nor could there be any allegation – that any Plaintiff entered into any credit transaction with Atalaya or ACMV. The allegations that Atalaya "knew or should have known" what Vision was allegedly doing in this regard fall far short of stating a plausible claim for relief under the Equal Credit Opportunity Act.

A review of the docket sheet in this matter reveals that Plaintiffs have defaulted the named defendants other than Atalaya and ACMV. It quite frankly appears that Plaintiffs are just trying to find a financially viable party to pay them some money. That is no excuse for charging a lender of funds to Vision with invidious discrimination. Discrimination based on race is despicable in any setting; wrongfully accusing another of engaging in racial discrimination is equally so. The FAC should be dismissed with prejudice, and movants should be awarded all costs and fees incurred in having to twice move to dismiss this case.

## STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) permits the dismissal of a complaint when it fails to state a claim upon which relief can be granted. A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. Fed.R.Civ.P. 8(a)(2) requires a "short and plain statement of the claim showing the pleader is entitled to relief" in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d. 80 (1957)). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Nevertheless, the rule that "a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* See *Rodriguez v. Honigman Miller Schwartz & Cohn LLP*, 465 Fed. Appx. 504, 507 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  A complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Twombly*, 550 U.S. at 556. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiffs must provide the grounds for their entitlement to relief, and not simply rely on labels, conclusions, and "formulaic recitation of the elements" of the claim.  *Id.*

*Iqbal* further refined *Twombly,* establishing a two-pronged approach to evaluating the sufficiency of a complaint in the face of a motion to dismiss:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  ***While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations***.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.*, at 679.  Tested against *Twombly* and *Iqbal*, the FAC in this plainly fails to state any viable claim against ACMV or Atalaya.

Finally, a "party is bound by what [she] states in [her] pleadings," even if those allegations plead her "out of court by alleging facts which show [she] has no claim." *Soo Line R.R. Co. v. St. Louis Southwestern R.R. Co.*, 125 F.3d 481, 483 (7th Cir. 1997); *See* also *Havenick v. Network Exp., Inc.*, 981 F. Supp. 480, 510 (E.D. Mich. 1997) (noting a plaintiff can plead himself out of court if he pleads facts that show that his suit is time-barred or otherwise without merit).

## PLAINTIFFS STATE NO PLAUSIBLE CLAIM AGAINST MOVANTS FOR VIOLATION OF THE FAIR HOUSING ACT

Count I of the FAC purports to allege a claim for violation of the Fair Housing Act, 42 U.S.C. §3601 et. set. Section 3604 of the Act provides in material part:

> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful--
>
> **(a)** To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> **(b)** To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
>
> **(c)** To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

**(d)** To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

**(e)** For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, sex, handicap, familial status, or national origin.

The FAC does not contain a single allegation that Atalaya or ACMV engaged in any act that comes within the ambit of any of the above prohibited activities. Atalaya was one of multiple sources of capital for Vision, and ACMV was a special purpose entity that simply held title to certain properties after they had been acquired by Vision. A person or entity that does not control the allegedly prohibited transaction is not a responsible party under this act. See, e.g., *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 799 F. Supp. 695, 711 (E.D. Mich. 1992), aff'd, 18 F.3d 337 (6th Cir. 1994).

The FAC also refers to section 3605 of the Act. That section provides in relevant part:

It shall be unlawful for any person or other entity ***whose business includes engaging in residential real estate-related transactions*** to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

Once again, the FAC does not allege – nor could it allege – that Atalaya or ACMV was or is engaged in the residential real estate business. Nor does the FAC

12

allege that any Plaintiff engaged in any real estate-related transaction with either Atalaya or ACMV. Count I of the FAC plainly fails to state a plausible claim against either Atalaya or ACMV for violation of the Fair Housing Act.

## PLAINTIFFS STATE NO PLAUSIBLE CLAIM AGAINST MOVANTS FOR VIOLATION OF THE EQUAL OPPORTUNITY ACT

Count II of the FAC purports to state a claim for violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §1691 et seq. That provision in general prohibits discrimination against borrowers in credit transactions. The following excerpts from *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998), illustrates the analysis in determining whether the ECOA applies:

> The ECOA prohibits discrimination in the extension of credit: "It shall be unlawful for *any creditor to discriminate against any applicant*, with respect to any aspect of a credit transaction ... because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a)(3). (emphasis added). The legislative history of the Act indicates that § 1691(a)(3) was "intended to bar retaliatory credit denials or terminations against applicants who exercise their rights under any part of the Consumer Credit Protection Act ... The 'good faith' qualification [also] recognizes [, however,] that some applicants may engage in frivolous or nuisance disputes which do reflect on their willingness to honor their obligations." Equal Credit Opportunity Act Amendments of 1976, Pub.L. No. 94–239, 1976 U.S.C.C.A.N. 403, 407. The Act was only intended to prohibit credit determinations based on "characteristics unrelated to creditworthiness." It was never intended to eliminate a "creditor's right to make a rational decision about an applicant's credit worthiness." *Id.* at 404–05. Thus, an ECOA violation cannot be shown by simply alleging that the creditor is attempting to collect on the debt.

13

Rather, "[i]n determining the existence of discrimination ... courts ... [should] look at the effects of a creditor's practices as well as the creditor's motives or conduct in individual transactions ... [and] judicial constructions of anti-discrimination legislation in the employment field ... are intended to serve as guides in the application of th[e] Act, especially with respect to the allocations of burdens of proof."

\*\*\*\*\*

The ECOA defines "adverse action" as:

> a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

15 U.S.C. § 1691(d)(6).

It also does not include "*[a]ny action* or forbearance relating to an account taken *in connection* with inactivity, *default, or delinquency* as to that account." 12 C.F.R. § 202.2(c)(2)(ii) (emphasis added).

As with all the other deficiencies of the FAC, no Plaintiff has alleged that it entered into a credit transaction with Atalaya or ACMV. At most, Plaintiff alleges that Vision obtained funds from Atalaya so IT (Vision) could enter into credit transactions with one or more of the Plaintiffs. Like a commercial bank providing a warehouse line of credit to a mortgage company, that commercial bank is simply not within the ambit of the ECOA should the mortgage company engage in a credit transaction with a borrower, which credit transaction somehow violates the ECOA.

Atalaya and ACMV have been unable to locate case law that even arguably supports pleading this claim against them. In one federal court case out of Pennsylvania, a litigant apparently attempted to plead some sort of 'aiding and abetting' claim against someone not a party to the credit transaction. In *S & G Petroleum Co. v. Brice Capital Corp.*, No. CIV. A. 92-5078, 1993 WL 497859, at *2 (E.D. Pa. Dec. 2, 1993), the court held that the statute makes clear that civil liability is imposed only upon creditors who violate the statute and that no case law exists to suggest that aiding and abetting under the ECOA is an actionable claim.

Count II of the FAC plainly fails to state a plausible claim against Atalaya or ACMV.

## ACMV AND ATALAYA ARE ENTITLED TO DISMISSAL WITH PREJUDICE

Whether Vision and its parent engaged in predatory lending in violation of the Fair Housing Act or the Equal Credit Opportunity Act is not at issue in this Motion. And whether because *some* of Vision's business was conducted in SE Michigan, and therefore should be presumed to be 'discriminatory' is likewise not at issue in this Motion.

What is at issue in this Motion is whether Plaintiffs, in their verve to try and find a financially viable defendant, have stated a plausible claim against a registered investment advisor that lent money to Vision, or a single purpose entity that

eventually held title to some of the properties acquired by Vision, under either the FHA or the ECOA. And in addressing these two questions, it must be remembered that: (i) no Plaintiff alleges that it had any dealings of any kind with Atalaya or ACMV; (ii) there is no allegation that Atalaya provided funds that in any way relate to Plaintiffs' dealings with Vision; and (iii) there is  no allegation that ACMV ever held title to or was otherwise involved in any of the Plaintiffs' home buying experiences.

Plaintiffs allege in paragraph 14 of the FAC that Vision and its parent, VPM Holdings, "conducted ***all*** the property acquisition, management, rental, and sale activities, and all interaction with consumers and contracting activities relating to the Vision homes." Plaintiffs are bound by that allegation, which clearly does not implicate either Atalaya or ACMV.

Atalaya and ACMV are entitled to dismissal of the FAC with prejudice, and to an award of all costs and fees in having to twice move to dismiss this misguided action as attempted against them.[7]

---

[7] The prevailing party in a Fair Housing Act case may be awarded all costs and fees pursuant to 42 U.S.C. 3613(c)(2).

## CONCLUSION AND RELIEF REQUESTED

There is little doubt that the FAC sets forth a good deal of detail regarding the business practices of Vision. Whether those business practices had any "racial" component is unknown to the movants.

There is further little doubt, however, that the FAC fails to state any plausible claim against ACMV or Atalaya. Plaintiffs fail to connect any of their experiences with either Atalaya or ACMV. And to the extent Plaintiffs rely on what they read in the "New York findings" – there is absolutely nothing in those "findings" about any alleged racial discrimination.

The movants engaged with Plaintiffs' counsel in accord with L.R. 7.1 in a good faith attempt to avoid having to file this Motion.  Despite these efforts, Plaintiffs refused to remove ACMV and Atalaya from their "civil rights" claims, wrongfully sullying them with public accusations of engaging in racial discrimination without a scintilla of support for such detestable allegations. Under these circumstances, ACMV and Atalaya should be awarded costs and fees as prevailing parties pursuant to 42 U.S.C. 3613(c)(2).

WHEREFORE, Atalaya and ACMV respectfully request that the Court dismiss Plaintiffs' FAC as to them, with prejudice, and award these Defendants all costs and attorneys' fees as allowed by law.

17

By:  /s/ *Keefe A. Brooks*

BROOKS WILKINS SHARKEY & TURCO PLLC
*Attorneys for Defendants Atalaya and ACMV Only*
401 S. Old Woodward, Suite 400
Birmingham, Michigan 48009
248-971-1800
brooks@bwst-law.com
DATED: February 9, 2021             P31680

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

By:    /s/ Keefe A. Brooks

BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward, Suite 400
Birmingham, Michigan 48009
(248) 971-1800
brooks@bwst-law.com
P31680