# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RHONDA HENDERSON, et al., on
behalf of themselves and all others
similarly situated,

    Plaintiffs,

v.

VISION PROPERTY
MANAGEMENT, LLC, et al.,

    Defendants.

Case No. 20-cv-12649

Hon. Shalina D. Kumar

Mag. Judge David R. Grand

CLASS ACTION

---

## PLAINTIFFS' UNOPPOSED MOTION TO CERTIFY THE CLASSES FOR SETTLEMENT PURPOSES AND DIRECT NOTICE OF SETTLEMENT TO THE CLASSES

Plaintiffs Rhonda Henderson, Roberta Faulks, Rachel Church, Teaha Jackson, and Chelsea Pobur, individually and on behalf of others similarly situated ("Plaintiffs" or "Named Plaintiffs"), respectfully move to certify the classes for settlement purposes and direct notice of the settlement to the classes. The proposed class action Settlement Agreement and Release ("settlement agreement"), attached as Exhibit 1, will fully resolve the instant action against Defendants ACM Vision V, LLC ("ACMV"); Inmost Partners; DSAAgent, LLC; Statebridge Company, LLC ("Statebridge"); DS Agent, LLC; JY First Co. Ltd.; DSV SPV 1 LLC, DSV SPV 2

LLC, DSV SPV 3 LLC (collectively the "DSV" Defendants); FTE Networks, Inc., US Home Rentals, LLC ("USHR"), Kaja Holdings, LLC, Kaja Holdings II, LLC, MI Seven, LLC, IN Seven, LLC, RVFM 4 Series, Boom SC, Alan Investments III, LLC, and HOMI Holdings, LLC (collectively the "FTE" Defendants); (individually and collectively the "Settling Defendants"), as well as Atalaya Capital Management LP ("Atalaya"); Kookmin Bank ("Kookmin"), and Samsung Securities, Co. Ltd., ("Samsung") (Kookmin and Samsung are referred to collectively as the "Issuer Noteholders").[1]

Plaintiffs respectfully request that the Court issue an order: (A) preliminarily approving the class settlement attached as Exhibit 1; (B) certifying two classes for purposes of settlement; (C) appointing the Named Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel; (D) approving the proposed class notices, Exhibit 2, and procedures in Section 4 of the settlement agreement and directing that notice of the proposed class settlement be made to the class members in accordance with those procedures; and (E) scheduling a fairness hearing at least one hundred and twenty (120) days after the Court's preliminary approval of the class settlement.

---

[1] The Issuer Noteholders have contested the Court's exercise of personal jurisdiction over them in this Litigation. This Settlement Agreement does not indicate any assent to personal jurisdiction by the Issuer Noteholders.

Neither JY First Co. Ltd. nor DSAagent, LLC are parties to the Litigation.

1.     **Preliminary Approval of Class Settlement.** The Sixth Circuit has explained that "in order to approve a class action settlement: (1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). The parties must supply the Court with sufficient information regarding the proposed class settlement to enable it to make those determinations. *See* Fed. R. Civ. P. 23(e)(1)(A).

2.     Here, the parties have provided the Court with a copy of the proposed settlement agreement (Exhibit 1). For the reasons explained more fully in the accompanying brief, the parties submit that the proposed settlement agreement, which was negotiated heavily at arm's length, provides adequate and material relief to the class, treats class members equitably, and allows both sides to avoid substantial costs, risks, and delay that would result from the continuation of this complex litigation. *See* Fed. R. Civ. P. 23(e)(2). Class counsel and Plaintiffs support approval of the proposed settlement. The parties thus request that the Court preliminarily approve the proposed class settlement agreement.

3.     **Class Certification for Purposes of Settlement.** Prior to approving a settlement that includes a class component, a court must conditionally certify the class. Fed. R. Civ. P. 23(e); *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 621–22 (E.D. Mich. 2020). At the preliminary certification stage, the court "makes a preliminary fairness evaluation finding that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *In re Flint Water Cases*, 499 F. Supp. 3d 399, 419 (E.D. Mich. 2021) (cleaned up). Class certification is appropriate where plaintiffs can demonstrate that the putative class meets the numerosity, commonality, typicality, and adequacy of representation requirements. Fed. R. Civ. P. 23(a); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). In addition, because Plaintiffs seek certification under Rule 23(b)(3), they must also demonstrate that the predominance and superiority requirements are met. Fed. R. Civ. P. 23(b)(3).

4.     The parties propose certification of two settlement classes. Class Members are defined as all persons who entered into a LOP in the state of Michigan from January 1, 2013, through December 31, 2019, that was facilitated by, arranged by, made by, assigned to, or in which the subject property was owned at any time by any of the Defendants in the Litigation. The first class is the LOP Occupant Class and is defined as all Class Members, or their heirs, who entered into an LOP in the State of Michigan that has been assigned to or originated from DSV or the FTE

4

Defendants and who are in possession or control of property that is subject to such LOP as of the Settlement Effective Date, and which property is an Occupied Property. For the avoidance of doubt, LOP Occupants does not include any person who had an LOP and exercised the purchase option, whether through seller financing, third party financing, or cash. The second class is the Non-Occupant Class Members and is defined as all Class Members who are not LOP Occupant Class Members.

5.     For the reasons set forth more explicitly in the accompanying brief, the two Settlement Classes meet the requirement for preliminary certification because the class is so numerous that joinder of all members is impracticable, there are common questions of law and fact to the class, the claims and/or defenses of the Plaintiffs will fairly and adequately protect the interests of the class, there are common issues of law and fact that predominate over individual ones, and the class action vehicle is a superior way to resolve this controversy.

6.     **Appointment of Class Representatives and Class Counsel**. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *See IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 592. Interim class counsel may be appointed on behalf of a putative class before certifying the action as a class action; when a court does certify a class, it must appoint class counsel. Fed. R. Civ. P. 23(g)(1), (3). The named Plaintiffs' interests are consistent

with and not antagonistic to the interests of the class, and they have participated in this complex litigation for over four years, requiring them to incur significant demands on their time and expenses to participate.

7.     Plaintiffs request that their current counsel be appointed as class counsel, as they are highly qualified and experienced attorneys with extensive experience in complex class action litigation, consumer rights, civil rights, housing discrimination, class actions, and injunctive and declaratory relief, and will commit the resources necessary to represent the class.

8.     **Class Notice.** Rule 23(e) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal . . ." Fed. R. Civ. P. 23(e)(1)(B). "The notice should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 629 (6th Cir. 2007).

9.     The parties attached copies of class notices for the LOP Occupant Class and LOP Non-Occupant Class (Exhibit 2) for the Court's review and approval. Within ten days of the Court's order directing notice to the class, Class Counsel will send the Class List to the settlement administrator. The settlement administrator will mail out, by e-mail and first-class US mail, the class notices to Class Members within

twenty (20) days of receiving the Class List. Class Members will have sixty (60) days from the date of mailing the notices to object to or opt out of the Settlement Agreement pursuant to the instructions in Sections 4.2 and 4.3 of the Agreement and as instructed in the class notices. The parties respectfully request that the Court approve the proposed class notice procedures and direct that class notice be provided accordance therewith.

10.     **Fairness Hearing**. A class settlement may be approved only after "a formal fairness hearing or final approval hearing, at which class members may be heard regarding the settlement, where evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be offered." *Garner*, 333 F.R.D. at 620; Fed. R. Civ. P. 23(e)(2).

11.     To ensure that class members have sufficient time to receive notice and raise any objections or opt out, the parties recommend that the Court schedule a fairness or final approval hearing for at least one hundred and twenty (120) days after the Court's preliminary approval of the settlement. This would allow Class Counsel to send the Class List to the settlement administrator and for the settlement administrator to prepare and mail out the class notices, time for class members to receive notice and object or opt out, time for the Court and parties to review any objections and to file responses, and for the parties to submit motions for final approval of the settlement.

12.    For the reasons set forth in the attached brief and supporting documents, the settlement is fair, reasonable, and adequate and serves the best interests of the Class Members.

13.    Upon finally approving the Settlement, the parties will submit a proposed order certifying the classes for settlement purposes and dismissing the litigation with prejudice.

14.    According to LR 7.1, Plaintiffs requested concurrence from Defendants in this motion and received no opposition.

WHEREFORE, Plaintiffs respectfully request that the Court issue an order:

A. preliminarily approving the class settlement attached as Exhibit 1;

B. certifying two classes for purposes of settlement;

C. appointing the Named Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

D. approving the proposed class notices, Exhibit 2, and procedures in Section 4 of the settlement agreement and directing that notice of the proposed class settlement be made to the class members in accordance with those procedures; and

E. scheduling a fairness hearing at least one hundred and twenty (120) days after the Court's preliminary approval of the class settlement.

A proposed Order Certifying the Classes for Settlement Purposes and Directing Notice of Settlement to the Classes is attached as Exhibit 3.

Dated: October 30, 2024

Respectfully submitted by,

/s/ Shennan Kavanagh
**NATIONAL CONSUMER LAW CENTER**
Shennan Kavanagh (BBO #655174)
Sarah B. Mancini (G.B. # 319930)
7 Winthrop Square
Boston, MA 02110
Tel: (617) 542-8010
skavanagh@nclc.org
smancini@nclc.org

/s/ Lorray S.C. Brown
**MICHIGAN POVERTY LAW PROGRAM**
Lorray S. C. Brown (P60753)
15 South Washington Street, Suite 202
Ypsilanti, Michigan 48197
Tel.: (734) 998-6100 ext. 613
Fax.: (734) 998-9125
lorrayb@mplp.org

/s/ Bonsitu Kitaba-Gaviglio
**AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN**
Bonsitu Kitaba-Gaviglio (P78822)
Daniel S. Korobkin (P72842)
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6800
bkitaba@aclumich.org
dkorobkin@aclumich.org

/s/ Jennifer A. Holmes

**NAACP LEGAL DEFENSE
AND EDUCATIONAL FUND, INC.**
Jennifer A. Holmes (D.C. Bar ID
1018798)
700 14th Street NW, Suite 600
Washington, DC 20005
Tel.: (202) 682-1300
jholmes@naacpldf.org

Alexandra Sloane Thompson (N.Y.
5241989)
Tiffani Burgess (N.Y. 5849344)
Pilar Whitaker (D.C. Bar ID 90009046)
40 Rector St, 5th Floor
New York, NY 10006
212-965-2200
athompson@naacpldf.org
tburgess@naacpldf.org
pwhitaker@naacpldf.org

*Attorneys for Plaintiffs and the
Putative Classes*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA HENDERSON, et al., on
behalf of themselves and all others
similarly situated,

     Plaintiffs,

v.

VISION PROPERTY
MANAGEMENT, LLC, et al.,

     Defendants.

Case No. 20-cv-12649

Hon. Shalina D. Kumar

Mag. Judge David R. Grand

CLASS ACTION

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR UNOPPOSED MOTION TO
CERTIFY THE CLASSES FOR SETTLEMENT PURPOSES AND DIRECT
NOTICE OF SETTLEMENT TO THE CLASSES**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................... iv

STATEMENT OF ISSUES PRESENTED ............................................... vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. viii

INTRODUCTION ...................................................................................1

HISTORY OF THE LITIGATION AND SETTLEMENT NEGOTIATIONS..........2

OVERVIEW OF PROPOSED SETTLEMENT .......................................................3

I.    Settlement Classes. ..................................................................3

II.   Creation of the Qualified Settlement Fund, Net Settlement Fund, and Attorney's Fees and Costs Fund. ............................................................3

III.  Equitable and Monetary Relief for Settlement Class Members. ................4

IV.   Attorney's Fees and Costs. ...............................................................6

LEGAL STANDARD .....................................................................................6

I.    THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED CLASS SETTLEMENT AGREEMENT............................................................7

A.   The Settlement Is the Product of Extensive Arm's Length Negotiations, and There Is No Risk of Fraud or Collusion.......................................................8

B.   The Settlement Will Expeditiously Provide Relief to Class Members and Avoid the Risks and Expenses of Further Prolonged Complex Litigation. .......9

C.   Significant Investigation and Exchange of Information Occurred for Plaintiffs to Have Sufficient Information About Vision's Pertinent Business Practices. ............................................................................................10

D.   Success on the Merits Is Not Guaranteed. .................................................11

E.   Class Counsel and Class Representatives Support the Settlement. ...........11

F.   The Settlement is Fair to Absent Class Members. ....................................12

G.   The Public Interest Favors Approval of the Settlement.............................13

H.   The Attorney's Fees and Costs Allocation is Fair, Reasonable, and Adequate............................................................................................14

II.   THE COURT SHOULD CERTIFY TWO CLASSES FOR PURPOSES OF
SETTLEMENT. .......................................................................................15

   A.   The Settlement Satisfies Rule 23(a). .......................................................15

      i.   Numerosity is Established. ...................................................................17

      ii.   Class Claims Present Common Issues of Law or Fact. ..........................17

      iii.   Plaintiffs' Claims are Typical of Class Members' Claims. ................18

      iv.   Plaintiffs and Class Counsel are Adequate and Should be Appointed
Class Representatives and Class Counsel. ......................................................19

      v.   The Settlement satisfies Rule 23(a)'s implicit requirements. .................21

   B.   The Settlement Satisfies Rule 23(b)(3). ...................................................22

      i.   Common Issues of Law and Fact Predominate. ...................................22

III.   THE COURT SHOULD APPROVE CLASS NOTICES AND
PROCEDURES. ...................................................................................24

IV.   THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING ...25

CONCLUSION .......................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Coulter-Owens v. Rodale, Inc.*, No. 14-12688, 2016 WL 5476490 (E.D. Mich. Sept. 29, 2016) ............................................................................11

*Dallas v. Alcatel-Lucent USA, Inc.*, No. 09–14596, 2013 WL 2197624, (E.D. Mich. May 20, 2013) ..............................................................................9

*Does 1–2 v. Déjà Vu Servs., Inc.,* 925 F.3d 886 (6th Cir. 2019) .............. 8, 9, 12, 14

*Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062 (S.D. Ohio May 17, 2021) ....................................................................13

*Garner Props. & Mgmt., LLC v. Inkster*, 333 F.R.D. 614 (E.D. Mich. 2020).........25

*Geary v. Green Tree Servicing, LLC*, No. 14-cv-00522, 2017 WL 2608691 (S.D. Ohio June 16, 2017) ....................................................................23

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)...............8, 9

*In re Delphi Corp. Secs.*, 248 F.R.D. 483 (E.D. Mich. 2008) ............................9, 12

*In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664 (6th Cir. 2020)......................15

*In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ..................................................................15

*In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985 (S.D. Ohio 2001)............8

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ....................................8, 11, 24

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, (E.D. Mich. 2006) .......... passim

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010).............13

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009).......................................9

*Reese v. CNH Am., LLC*, 227 F.R.D. 483 (E.D. Mich. 2005)..................................17

iv

*Rikos v. Proctor & Gamble Co*., 799 F3d. 497 (6th Cir. 2015) ...............................22

*Salem v. Mich. Dep't of Corr.*, No. 13-14567, 2016 WL 7409953 (E.D. Mich. Dec. 22, 2016) ........................................................................... 16, 21

*Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976)............................17

*Sheick v. Auto. Component Carrier, LLC,* No. 09-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ........................................................................7

*Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281 (N.D. Ohio 2007) ..............................17

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001) ........................................................................ viii, 7

*Thomsen v. Morley Cos., Inc.*, 639 F.Supp.3d 758 (E.D. Mich. 2022) ....................7

*UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. March 31, 2006) ........................................................................10

*Waters v. Pizza to You*, *LLC*, No. 3:19-cv-372, 2022 WL 404614 (S.D. Ohio Feb. 9, 2022) ........................................................................24

## Rules

Fed. R. Civ. P. 23 ............................................................................ passim

## STATEMENT OF ISSUES PRESENTED

I.    Should the Court preliminarily approve the proposed class settlement agreement, attached as Exhibit 1, where the class representatives and class counsel have adequately represented the class, resulting in the settlement agreement negotiated at arm's length to resolve a complex case and provides adequate, fair, and sufficient relief to the class members, and where continued litigation carries significant risks and would require substantial resources on both sides?

II.   Should the Court provisionally certify the Settlement Classes for purposes of settlement where common questions of law and fact predominate such that maintaining the suit as a class action is superior to other methods of adjudication?

III.  Should the Court appoint Rhonda Henderson, Roberta Faulks, Rachel Church, Teaha Jackson, and Chelsea Pobur as Settlement Class Representatives, and should the Court appoint attorneys at the ACLU of Michigan, NAACP Legal Defense and Educational Fund, Inc., Michigan Poverty Law Program, and National Consumer Law Center as Settlement Class Counsel?

IV.   Should the Court approve the class notices, attached as Exhibit 2, and the class notice procedures set out in Section 4 of the settlement agreement and direct

notice of the proposed settlement to the class members in accordance with those provisions?

V.   Should the Court schedule a fairness hearing at least one hundred and twenty (120) days after the Court preliminarily approves the settlement so that the class members will have adequate time and a fair opportunity to receive the notices and opt out or object?

**Plaintiffs and Defendants' answer: Yes**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 23

*Garner Props. & Mgmt., LLC v. Inkster*, 333 F.R.D. 614 (E.D. Mich. 2020)

*Hicks v. State Farm Fire & Cas. Co.,* 965 F.3d 452 (6th Cir. 2020)

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597–98 (E.D. Mich. 2006)

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001)

## INTRODUCTION

Plaintiffs Rhonda Henderson, Roberta Faulks, Rachel Church, Teaha Jackson, and Chelsea Pobur, individually and on behalf of others similarly situated ("Plaintiffs" or "Named Plaintiffs"), submit this Brief in Support of their Unoppposed Motion to Certify the Classes for Settlement Purposes and Direct Notice of Settlement to the Classes. The proposed class action Settlement Agreement and Release ("settlement agreement"), attached as Exhibit 1, will fully resolve the instant action against Defendants ACM Vision V, LLC ("ACMV"); Inmost Partners; DSAAgent, LLC; Statebridge Company, LLC ("Statebridge"); DS Agent, LLC; JY First Co. Ltd.; DSV SPV 1 LLC, DSV SPV 2 LLC, DSV SPV 3 LLC (collectively the "DSV" Defendants); FTE Networks, Inc., US Home Rentals, LLC ("USHR"), Kaja Holdings, LLC, Kaja Holdings II, LLC, MI Seven, LLC, IN Seven, LLC, RVFM 4 Series, Boom SC, Alan Investments III, LLC, and HOMI Holdings, LLC (collectively the "FTE" Defendants); (individually and collectively the "Settling Defendants"), as well as Atalaya Capital Management LP ("Atalaya"); Kookmin Bank ("Kookmin"), and Samsung Securities, Co. Ltd., ("Samsung") (Kookmin and Samsung are referred to collectively as the "Issuer Noteholders").[1] The settlement

---

[1] The Issuer Noteholders have contested the Court's exercise of personal jurisdiction over them in this Litigation. This Settlement Agreement does not indicate any assent to personal jurisdiction by the Issuer Noteholders.

 Neither JY First Co. Ltd. nor DSAagent, LLC are parties to the Litigation.

1

agreement is the result of arm's-length, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this complex civil rights and consumer law class action for four years. As set forth in more detail below, the settlement achieved by the parties is fair, reasonable and provides substantial benefits, including monetary and equitable relief to the settlement classes now, while avoiding the delay, risk and expense inherent in the continued litigation of this action.

## HISTORY OF THE LITIGATION AND SETTLEMENT NEGOTIATIONS

This action arose out of Vision Property Management's Residential Lease with Option to Purchase ("LOP") program that Plaintiffs allege was deceptive and disproportionately impacted Black consumers in Michigan. Plaintiffs filed their complaint on September 29, 2020, alleging claims under the Fair Housing Act, the Equal Credit Opportunity Act, the Truth in Lending Act, and the Real Estate Settlement Procedures Act, as well as state law claims.

After extensive discovery and motion practice over four years, Plaintiffs and the Settling Defendants participated in weeks-long intensive good-faith mediation, followed by several weeks of negotiations. The Court held in-person mediation sessions for the parties on June 18, 2024, and August 1, 2024. The parties met and exchanged information about possible settlement terms, the LOP transactions, and the size and scope of the classes, and submitted confidential mediation statements to

2

the Court. On August 8, 2024, the parties notified the Court that they reached a tentative agreement on all of the major terms of the settlement. The parties finalized the settlement agreement on October 18, 2024, resulting in the signed Settlement Agreement attached hereto as required by Rule 23(e)(3) as Exhibit 1.

## OVERVIEW OF PROPOSED SETTLEMENT

This section provides a summary of the proposed settlement for purposes of directing notice to the class. The full proposed settlement is lengthy and is attached as Exhibit 1.

### I. Settlement Classes.

The proposed settlement agreement provides monetary and/or equitable relief to two settlement classes: the LOP Occupant Settlement Class and the LOP Non-Occupant Settlement Class. (Section 1.19; 1.25; 3.2). The definition of each class is discussed further below.

### II. Creation of the Qualified Settlement Fund, Net Settlement Fund, and Attorney's Fees and Costs Fund.

The proposed settlement authorizes the creation of two funds. The Qualified Settlement Fund ("QSF") will be funded with three hundred and seventy-five thousand dollars ($375,000) by Defendant DSV. (Section 1.33; 3.1(A)–(B)). The QSF will fund service awards of ten thousand dollars ($10,000) to each of the five Named Plaintiffs. (Section 1.33; 3.6). The Net Settlement Fund is the remainder of the Qualified Settlement Fund, and will provide monetary compensation, distributed

on a pro rata basis, for the LOP Non-Occupant Settlement Class. (Section 1.21; 3.3). The Attorney's Fees and Costs Fund will be funded with three hundred and seventy-five thousand dollars ($375,000) by Defendant ACMV to fund settlement administration and Class Counsel's attorney's fees and costs. (Section 1.5; 3.1(C); 3.5).

### III.   Equitable and Monetary Relief for Settlement Class Members.

The LOP Occupant Class Members will be given the opportunity to elect one of two options. (Section 3.3). First, under the "Payoff Option," an Occupant Class Member may pay off the remaining balance of their contract, either through third-party financing or cash, and receive the property deed, as well as a $2,000 credit toward the option price balance at closing. If an LOP Occupant Class Member elects the Payoff Option but does not pay the option price balance by the end of the lease term, the Class Member must vacate the property and upon timely doing so, shall receive $2,000, or if they fail to vacate, will forfeit the $2,000 payment and may be subject to an eviction in accordance with Michigan law. An LOP occupant may also sell the property and retain the equity above the LOP option price. The opportunities to obtain these forms of relief are significant because they facilitate access to the benefits of homeownership, of which Plaintiffs allege they and the class were deprived.

Second, under the Cash for Keys Option, an Occupant Class Member may also elect to vacate the property at the outset and receive $4,000 in exchange for doing so.

Rental arrears are waived for all Class Members through February 28, 2025. *Id*.

These benefits are significant and essential to allow settlement class members to obtain a fresh start, either by setting them up to have a reasonable chance to secure financing to own their homes, or being able to keep the full amount of equity in their homes if they sell, or being able to vacate the property with cash in hand to effectively move into new residences. Plaintiffs' counsel, in addition to the settlement administrator, will be available to settlement class members to assist them in navigating this process.

The LOP Non-Occupant Class Members will be entitled to a monetary award from the Net Settlement Fund. (Section 3.4). A pro rata payment will be determined by dividing the Net Settlement Fund by the total number of claims filed by the LOP Non-Occupant Class Members. *Id*.

In addition to being entitled to receive the above-named relief, the five Named Plaintiffs will receive ten thousand dollars ($10,000) as a service award from the Qualified Settlement Fund. (Section 3.6).

The proposed settlement agreement also provides that this Court will retain jurisdiction over the interpretation and implementation of the agreement (Section 6.8), a release of claims (Section 5), and provides that this case will be dismissed with prejudice when a final order is entered (Section 3.7; 4.4). Plaintiffs' counsel estimates that the proposed settlement agreement is approximately three million five hundred thousand dollars ($3,500,000) in value to class members.

## IV.    Attorney's Fees and Costs.

For purposes of settlement, Plaintiffs request that Plaintiffs' counsel be appointed as Class Counsel, and that the court approve the agreed-upon attorney's fees and costs of three hundred and seventy-five thousand dollars ($375,000), which will also be used to fund the settlement administration. (Section 3.5).

## LEGAL STANDARD

Under Rule 23(e), the claims of a class proposed to be certified for settlement purposes may be settled only with the Court's approval. Fed. R. Civ. P. 23(e). The Sixth Circuit has explained that, "in order to approve a class action settlement: (1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those

6

affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001).

## I.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED CLASS SETTLEMENT AGREEMENT.

"At the preliminary-approval stage, the issue is whether the Agreement is fair enough to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections." *Thomsen v. Morley Cos., Inc.*, 639 F.Supp.3d 758, 767 (E.D. Mich. 2022) (internal quotation marks omitted). A settlement "should be preliminarily approved if it (1) 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys,' and (2) 'appears to fall within the range of possible approval.'" *Sheick v. Auto. Component Carrier, LLC,* No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010) (Ex. 4).

To evaluate the fairness and adequacy of a settlement under Rule 23(e), the Court considers whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
   (i)   the cost, risks, and delay of trial and appeal;
   (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

7

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Sixth Circuit has "established a seven-factor test to assess whether a class action settlement is 'fair, reasonable, and adequate' under the Federal Rule of Civil Procedure 23(e)." *Does 1–2 v. Déjà Vu Servs., Inc.,* 925 F.3d 886, 894 (6th Cir. 2019) (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). Those factors include: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631; *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003). Plaintiffs submit that the relevant considerations support preliminary approval here.

## A. The Settlement Is the Product of Extensive Arm's Length Negotiations, and There Is No Risk of Fraud or Collusion.

Courts "'presume the absence of fraud or collusion' in negotiating [class-action] settlement[s], unless evidence to the contrary is offered." *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001)); *see also Moulton v.*

*U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009). Courts also have found

settlements that are a product of mediation satisfy the arms-length requirement. *See,*

*e.g.*, *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09–14596, 2013 WL 2197624, at *9

(E.D. Mich. May 20, 2013) (Ex. 5). The parties negotiated this Settlement at arm's

length and over several months with the assistance of the Court.

### B. The Settlement Will Expeditiously Provide Relief to Class Members and Avoid the Risks and Expenses of Further Prolonged Complex Litigation.

"[T]here is no such thing as risk-free, expense-free litigation." *IUE-CWA v.*

*Gen. Motors Corp.*, 238 F.R.D. 583, 596 (E.D. Mich. 2006). "Courts have held that

'there is a strong public interest in encouraging settlement of complex litigation and

class-action suits because they are 'notoriously difficult and unpredictable' and

settlement conserves judicial resources.'" *Déjà Vu*, 925 F.3d at 899 (quoting

*Cardizem*, 218 F.R.D. at 530). Class actions are inherently complex, and settlement

avoids the costs and delays associated with them. *See In re Delphi Corp. Secs.*, 248

F.R.D. 483, 497 (E.D. Mich. 2008) (citation omitted).

This case is no exception. Absent the proposed settlement, Plaintiffs and the

Settling Defendants would have to pursue additional motion practice, brief and argue

class certification, and prepare for and undertake a trial.

In addition to expeditious relief for both the LOP Occupant and Non-

Occupant Class Members, the proposed settlement provides certainty for the LOP

Occupant Class Members who will have the opportunity to obtain a deed and mortgage, purchase the property for cash, or sell the property and recoup the sale proceeds above the option price balance. One key goal of the litigation achieved by the proposed settlement is to convey clear title to the homes to LOP Occupant Class Members who so elect. Given the amount of money, time, effort, and care the LOP Occupant Class Members have put into their homes over time, and the considerable uncertainty they now face regarding their rights in the property, the proposed settlement would provide substantial and significant relief.

### C. Significant Investigation and Exchange of Information Occurred for Plaintiffs to Have Sufficient Information About Vision's Pertinent Business Practices.

The Sixth Circuit's standard does not require the court to "possess sufficient 'evidence to decide the merits of the issue because the compromise is proposed in order to avoid further litigation.'" *IUE-CWA*, 238 F.R.D. at 597 (quoting *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. March 31, 2006), at *19 (Ex. 6). Rather, "the district judge need only have sufficient facts before [her] to intelligently approve or disapprove the settlement." *Id.* at 597–98 (quoting *UAW*, 2006 WL 891151 at *19).

The Parties engaged in discovery, which included exchange of documents and depositions of the three Named Plaintiffs, representatives of Defendant Atalaya, and of the FTE Defendants. Prior to mediation, the Parties submitted confidential

mediation statements to the Court and exchanged information with one another about the size and scope of the class. The information gathered to date and in mediation satisfies the threshold necessary to demonstrate that class counsel and the Court have sufficient information to evaluate Plaintiffs' claims.

### D. Success on the Merits Is Not Guaranteed.

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631. In assessing the parties' settlement, the Court's task "is not to decide whether one side is right or even whether one side has the better of these arguments . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.* at 632.

Here, a bona fide legal dispute exists in which neither side is guaranteed success on the merits. While Plaintiffs are confident in the merits of this case, the Settling Defendants deny liability for any alleged discriminatory practices on the part of Vision and themselves.

### E. Class Counsel and Class Representatives Support the Settlement.

This Court has consistently held that "where class counsel is experienced and diligent, their 'endorsement of the settlement is entitled to significant weight.'" *Coulter-Owens v. Rodale, Inc.*, No. 14-12688, 2016 WL 5476490, at *4 (E.D. Mich. Sept. 29, 2016) (Ex. 7). Since counsel for Plaintiffs have extensive experience, their

11

"positive outlook toward the fairness of the settlement" favors approving it. *Déjà Vu*, 925 F.3d at 899. Class Counsel have extensive experience and expertise in complex litigation and class actions. Ex. 8, NCLC Decl. ¶¶ 3, 9; Ex. 9, ACLU-MI Decl. ¶¶ 2, 5; Ex. 10, LDF Decl. ¶¶ 3, 4; and Ex. 11, MPLP Decl. ¶¶ 5–7. All class representatives have faithfully and fairly advocated for the best interests of the class members and fully support the settlement. Ex. 9, ACLU-MI Decl. ¶ 8.

### F. The Settlement is Fair to Absent Class Members.

"This factor assesses whether the proposed settlement[] 'appear[s] to be the result of arm's length negotiations between the parties and fairly resolves all claims which were, or could have been asserted.'" *Delphi*, 248 F.R.D. at 498. Experienced counsel and an experienced mediator also serve as a check on the process and a safeguard for the rights of absent class members. *Id*.

The proposed settlement is even-handed and does not improperly favor Plaintiffs compared to the rest of the class members. All class members will be entitled to receive relief based on their individual circumstances, which is a substantial benefit. The settlement agreement provides that Class Counsel will ask the Court to approve a service award of ten thousand dollars ($10,000) to each of the five Class Representatives. Courts within the Sixth Circuit have recognized that "in common fund cases and where the settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action

12

litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010).

Here, the Named Plaintiffs' service award is appropriate for the level of their involvement in the case. The Named Plaintiffs have been actively involved in the litigation since they each joined the case. Their participation has included, but was not limited to, providing documents and information to counsel, sitting for depositions, reviewing significant filings, and attending numerous meetings with counsel. When presented with settlement offers, Named Plaintiffs always thought about and protected the interests of absent class members, even at times rejecting offers that granted them greater relief than putative class members in exchange for dismissing the case. An award of ten thousand dollars is reasonable in light of their service and the benefits to class members. *See e.g.*, *Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062, at *8 (S.D. Ohio May 17, 2021) (Ex. 12). The settlement agreement also resolves all pending claims against all Defendants in the litigation.

### G. The Public Interest Favors Approval of the Settlement.

"Courts have held that 'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'" *Déjà Vu*,

925 F.3d at 899. "Conserving the resources of the parties and the court" serves the public interest. *IUE-CWA*, 238 F.R.D. at 599.

In addition to simplifying this litigation and conserving judicial resources, the proposed settlement will benefit the public through relief that will result in clarifying the rights of LOP Occupant Class Members with respect to their homes and creating opportunities for true homeownership or to walk away with compensation. *See* Ex. 1. Monetary relief to the LOP Non-Occupant Class would resolve the claims at issue and conserve legal resources. The relief for both classes seeks to remedy alleged discriminatory and predatory activity that occurred in Michigan's housing market affecting hundreds of people.

### H. The Attorney's Fees and Costs Allocation is Fair, Reasonable, and Adequate.

Further, the three hundred and seventy-five ($375,000) dollar allocation for Attorney's Fees and Costs Fund is fair, reasonable, and adequate. On behalf of Plaintiffs, nine attorneys from across four different organizations expended significant time and costs litigating this case over the past four years. This has resulted in Plaintiffs' counsel's total lodestar of nearly 3 million ($3,000,000) dollars and costs exceeding one-hundred thousand ($100,000) dollars, and only a fraction of those amounts will be reimbursed through the Attorney's Fees and Costs Fund. This fund also includes the Settlement Administrator's fees and costs, and other costs of settlement administration to assist class members through the settlement options.

14

The fees sought amount to no more than 10.7% of the total value created by the settlement and attorneys' fees amount to approximately 10%–15% of Plaintiffs' counsel's lodestar. *See* Ex. 8, NCLC Decl. ¶ 12; Ex. 9, ACLU Decl. ¶ 10; Ex. 10, LDF Decl. ¶ 25; Ex. 11, MPLP Decl. ¶ 12. The requested fee award is thus far below the proportions generally approved by courts and is fair, reasonable, and adequate and satisfies Rule 23(e)(2). *See e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (Ex. 13) (noting that 30% of the total value of the settlement is a "well-accepted ratio" for fee awards in complex class actions).

## II.   THE COURT SHOULD CERTIFY TWO CLASSES FOR PURPOSES OF SETTLEMENT.

In addition to finding that it is likely to approve the settlement agreement, the Court must also evaluate whether it is likely to certify the classes. *See* Fed. R. Civ. P. 23(e). Class certification, in turn, requires satisfaction of all the elements under Rule 23(a) and one or more of the conditions under Rule 23(b). *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 674 (6th Cir. 2020). Here, Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3).

### A. The Settlement Satisfies Rule 23(a).

The settlement agreement defines Class Members as "all persons who entered into a LOP in the state of Michigan from January 1, 2013, through December 31, 2019, that was facilitated by, arranged by, made by, assigned to (in fee and/or as

15

collateral), or for which the subject property was owned at any time by, any of the Defendants (as well as their affiliates) in the Litigation." The two settlement classes are defined as follows:

> "LOP Occupant Class Members" means all Class Members, or their heirs, who entered into an LOP in the State of Michigan that has been assigned to or originated from DSV or the FTE Defendants and who are in possession or control of property that is subject to such LOP as of the Settlement Effective Date, and which property is an Occupied Property. For the avoidance of doubt, LOP Occupants does not include any person who had an LOP and exercised the purchase option, whether through seller financing, third party financing, or cash.

> "Non-Occupant Class Members" means all Class Members who are not LOP Occupant Class Members.

To satisfy the requirements of Rule 23(a), the Named Plaintiffs must for each settlement class show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to the enumerated requirements of Rule 23(a), the Named Plaintiffs must also meet Rule 23(a)'s implicit requirements: that each "class [is] 'definite' or 'ascertainable'" and that the Named Plaintiffs are "member[s] of the class." *E.g.*, *Salem v. Mich. Dep't of Corr.*, No. 13-14567, 2016 WL 7409953, at *4 (E.D. Mich. Dec. 22, 2016) (Ex. 14).

i. <u>Numerosity is Established.</u>

While there is no "strict numerical test," *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n 4 (6th Cir. 1976), courts have recognized that a class size of 40 or more members is sufficient to satisfy numerosity. *See Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (collecting cases). In total, the Class Members were involved in approximately 774 transactions (130 in which Occupant Class Members are still occupying the home, and approximately 644 transactions involving Non-Occupant Class Members) based on written discovery and the FTE and Statebridge Defendants' documents and representations. Ex. 8, NCLC Decl. ¶ 8. Each transaction represents at least one class member, with many of the transactions including both a primary and secondary applicant. Thus, per Rule 23(a)(1), the Classes plainly are "'so numerous that joinder of all members is impracticable.'" *IUE-CWU*, 238 F.R.D. at 591 (quoting Fed. R. Civ. P. 23(a)(1)).

ii. <u>Class Claims Present Common Issues of Law or Fact.</u>

Under Rule 23(a)(2), commonality "'simply requires a common question of law or fact.'" *Reese v. CNH Am., LLC*, 227 F.R.D. 483, 486 (E.D. Mich. 2005). A single common question of law or fact will suffice. *Id*. The commonality inquiry "focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *Davis v. GEICO Cas. Co.*, No. 2:19-CV-2477, 2021 WL 5877843, at *4 (S.D. Ohio Dec. 13, 2021) (Ex. 15).

17

The common questions of law and fact here include:

(i) whether Vision intentionally targeted Black homebuyers in violation of the Fair Housing Act and Equal Credit Opportunity Act;

(ii) whether the transaction was covered by the Truth in Lending Act and whether Defendants' practices violated TILA;

(iii) whether Defendants failed to properly handle consumer escrow accounts for taxes and insurance as required by Real Estate Settlement Procedures Act and the LOP contract; and

(iv) whether the Class members are entitled to the equitable relief and statutory damages they seek.

### iii.  Plaintiffs' Claims are Typical of Class Members' Claims.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *IUE-CWA*, 238 F.R.D. at 591. The typicality requirement also focuses on the type of injury suffered by the Class and the interests of Class Members. *See id.*

Plaintiffs Henderson's, Faulks', and Church's and the LOP Occupant Class Members' claims and damages relate to their experiences attempting to purchase a home, which they still occupy, through Vision's LOP program. Plfs Sec. Am. Compl,

ECF No. 146-2, PageID.1780 and ECF No. 146-3, PageID.1974. Plaintiffs Jackson's and Pobur's damages and the Non-Occupant Class Members' damages claims relate to their unsuccessful attempts to purchase homes through Vision's LOP program, and subsequent surrender of the properties. *Id*. In this manner, Plaintiffs' claims arise out of the same event, practice, or course of conduct that gives rise to the claims of other class members, satisfying Rule 23(b)(3)'s typicality requirement.

### iv. Plaintiffs and Class Counsel are Adequate and Should be Appointed Class Representatives and Class Counsel.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *See IUE-CWA*, 238 F.R.D. at 592. This means, "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id*.

Plaintiffs' interests are consistent with and not antagonistic to the interests of the class. Plaintiffs all expended resources to obtain the benefit of the LOP contracts. Plaintiffs Faulks, Henderson, and Church, like members of the occupant class, have remained in their properties under the LOP contracts and seek to obtain the promise of a path to homeownership under their contracts. Plaintiffs Pobur and Jackson, like members of the non-occupant class, were unable to remain in their properties under the LOP contracts and seek to remedy the financial hardship they and others like them experienced. Plaintiffs' active pursuit of this matter—including motion

practice, discovery, and mediation—demonstrate that they are engaged representatives. *See also* I.F., *supra*.

The Named Plaintiffs' persistence in litigating this case over several years shows that they are prepared to thoroughly protect the interests of the class. During the pendency of the litigation, the Named Plaintiffs each undertook varying levels of burdens and risks, including remaining in properties that were uninhabitable at times and under contracts with terms that left them in legal limbo. These Plaintiffs incurred significant demands on their time and expenses to participate in litigation. Plaintiffs Henderson, Faulks, and Church participated for over four years, and Plaintiffs Pobur and Jackson participated for two years. Plaintiffs Henderson, Faulks, and Church have produced documents and been deposed, and all Named Plaintiffs have communicated extensively with their counsel regarding negotiations in this matter on behalf of absent class members. *See also* Ex. 9, ACLU-MI Decl. ¶ 7; Ex. 11, MPLP Decl. ¶ 10. Thus, they satisfy the requirements of Rule 23(a)(4).

Rule 23(g)(3) provides that a court may designate interim counsel to act on behalf of a putative class before certifying the action as a class action; when a court does certify a class it must appoint class counsel. To test for counsel's adequacy, "the court must consider:

> a) the work counsel has done in identifying or investigating potential claims in the action, b) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, c) counsel's knowledge of the applicable

> law, and d) resources counsel will commit to representing the
> class.

*IUE-CWA*, 238 F.R.D. at 592 (citing Fed. R. Civ. P. 23(g)(1)(A)). Class counsel must

also "fairly and adequately represent the interests of the class." Fed. R. Civ. P.

23(g)(4).

Plaintiffs' counsel investigated, developed, and pursued Plaintiffs' claims

vigorously and will continue to do so for the class. They are highly qualified and

experienced attorneys with extensive experience in complex class action litigation,

consumer rights, civil rights, and housing discrimination, class actions, and

injunctive and declaratory relief. *See* Exs. 8–11. Throughout this litigation, they have

zealously represented the interests of the Named Plaintiffs and putative class

members; engaged in extensive discovery, inclusive of deposition taking and

document exchange; and engaged in motion practice from September 29, 2020 until

a settlement agreement was reached in October 2024. *Id*. Plaintiffs' counsel have

devoted extensive time to this matter and are capable of committing the resources

necessary to represent the class. *Id*.

     v.   <u>The Settlement satisfies Rule 23(a)'s implicit requirements.</u>

"Despite the specificity of Rule 23, courts have grafted on to it two additional

criteria, often referred to as the 'implicit requirements' of class certification: that the

class be 'definite' or 'ascertainable' and that the class representative be a member of

the class." *Salem*, 2016 WL 7409953, at *4 (Ex. 14). Ascertainable means the

"proposed class is defined by objective criteria." *Rikos v. Proctor & Gamble Co.*, 799 F3d. 497, 526 (6th Cir. 2015). Plaintiffs have defined the Classes objectively as set forth in the class definitions, which were readily ascertainable from Defendants' records. Plaintiffs Henderson, Church, and Faulks are members of the LOP Occupant Class, and Plaintiffs Pobur and Jackson are members of the LOP Non-Occupant Class.

### B. The Settlement Satisfies Rule 23(b)(3).

i. Common Issues of Law and Fact Predominate.

Rule 23(b)(3), applicable to class actions seeking damages, requires that "common questions will *predominate* over individual ones." *Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452, 459 (6th Cir. 2020) (emphasis in original). "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof.'" *Id.* at 459–60.

All Class Members entered into LOP contracts that were based on a common form. Determining whether the LOP contract was unfair, deceptive, and/or predatory under the Fair Housing Act and Equal Credit Opportunity Act would involve the same legal and factual issues for all Class Members' claims. Another key common question is whether the LOP constituted credit under the Truth in Lending Act, and whether certain Defendants violated TILA when they failed to give any disclosures

of the interest rate, payment schedule, or credit terms. Lastly, the evidence of intentional targeting for the FHA and ECOA claims is also common across the class.

Adjudicating the merits of any one of Plaintiffs' claims would similarly resolve the claims of Class Members.

ii.    The Class Action Device Is Superior in this Action.

A class action must also be "a superior way to resolve the controversy." *Hicks*, 965 F.3d at 463. "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.'" *Id.* at 465.

The class device is superior in this case because the alternative to a single action would be potentially 774 individual actions, swamping the courts and resulting in inefficiencies and potentially inconsistent rulings. *Id.* A class-wide settlement is plainly superior with this type of complex litigation because the alternative to a class in reality is not individual actions, but no recovery at all. *Geary v. Green Tree Servicing, LLC*, No. 14-cv-00522, 2017 WL 2608691, at *10 (S.D. Ohio June 16, 2017) (Ex. 16). Indeed, over the life of this litigation, to Plaintiffs' knowledge, only one individual case has been filed about a Michigan LOP contract.

## III.  THE COURT SHOULD APPROVE CLASS NOTICES AND PROCEDURES.

Once the parties have reached a settlement agreement, the court must direct notice in a reasonable manner to all class members who would be bound by the proposed settlement agreement prior to approval. Fed. R. Civ. P. 23(e). "The notice should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *UAW*, 497 F.3d at 629. Under Rule 23 the notice "must clearly and concisely state in plain, easily understood language" the requirements in Rule 23(c)(2)(b).

Here, the proposed plan for providing notice to the class members is fair and reasonable. The respective Notices clearly apprise the Class Members of the background of the lawsuit, the scope of the proposed classes, and the terms of the Settlement Agreement and their rights and options with regards to it as required by Rule 23(c) and (e). *See* Ex. 2, Class Notices. Subject to the Court's approval, American Legal Claims Services LLC will act as the Settlement Administrator and perform all tasks specified and assigned to it in Section 4 of the agreement, including sending dual notices to Class Members by mail and email to last known addresses from the Defendants' records. Ex. 1; *see also Waters v. Pizza to You*, *LLC*, No. 3:19-cv-372, 2022 WL 404614, at *5 (S.D. Ohio Feb. 9, 2022) (Ex. 17) (holding that notice by email and mail was reasonable and appropriate).

24

## IV.     THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING

A class settlement may be approved only after a "final approval hearing, at which class members may be heard regarding the settlement, where evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be offered." *Garner Props. & Mgmt., LLC v. Inkster*, 333 F.R.D. 614, 620 (E.D. Mich. 2020) (internal quotation marks omitted); Fed. R. Civ. P. 23(e)(2). Plaintiffs therefore ask that this Court schedule a fairness hearing at least one hundred and twenty (120) days from preliminary approval of the settlement.

## CONCLUSION

Plaintiffs respectfully request that the Court issue an order granting this motion.

Dated: October 30, 2024

Respectfully submitted by,

/s/ Shennan Kavanagh
**NATIONAL CONSUMER LAW CENTER**
Shennan Kavanagh (B.B.O. #655174)
Sarah B. Mancini (G.B. # 319930)
7 Winthrop Square
Boston, MA 02110
Tel: (617) 542-8010
skavanagh@nclc.org
smancini@nclc.org

/s/ Lorray S.C. Brown
**MICHIGAN POVERTY LAW PROGRAM**
Lorray S. C. Brown (P60753)

/s/ Jennifer A. Holmes
**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**
Jennifer A. Holmes (D.C. Bar ID 1018798)
Pilar C. Whitaker (D.C. Bar ID 90009046)
700 14th Street NW, Suite 600
Washington, DC 20005
Tel.: (202) 682-1300
jholmes@naacpldf.org
pwhitaker@naacpldf.org

15 South Washington Street, Suite 202
Ypsilanti, Michigan 48197
Tel.: (734) 998-6100 ext. 613
Fax.: (734) 998-9125
lorrayb@mplp.org

/s/ Bonsitu Kitaba-Gaviglio
**AMERICAN   CIVIL   LIBERTIES
UNION FUND OF MICHIGAN**
Bonsitu Kitaba-Gaviglio (P78822)
Daniel S. Korobkin (P72842)
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6800
bkitaba@aclumich.org
dkorobkin@aclumich.org

Alexandra Sloane Thompson (N.Y.
5241989)
Tiffani Burgess (N.Y. 5849344)
40 Rector St, 5th Floor
New York, NY 10006
212-965-2200
athompson@naacpldf.org
tburgess@naacpldf.org

*Attorneys for Plaintiffs and the Putative Classes*