## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| RHONDA HENDERSON, et al., on behalf of themselves and all others similarly situated, | Case No. 20-cv-12649 |
| Plaintiffs, | Hon. Shalina D. Kumar |
| v. | Mag. Judge David R. Grand |
| VISION PROPERTY MANAGEMENT, LLC, et al., | CLASS ACTION |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASSES

Plaintiffs Rhonda Henderson, Roberta Faulks, Rachel Church, Teaha Jackson, and Chelsea Pobur ("Plaintiffs" or "Named Plaintiffs"), individually and on behalf of the Settlement Classes as defined in the Court's November 27, 2024 Order (ECF No. 267), respectfully move for final approval of the proposed class action settlement and certification of the settlement classes. The proposed class action Settlement Agreement and Release ("Settlement Agreement"), ECF No. 264-2, will fully resolve the instant action against Defendants ACM Vision V, LLC ("ACMV"); Inmost Partners; DSAAgent, LLC; Statebridge Company, LLC ("Statebridge"); DS Agent, LLC; JY First Co. Ltd.; DSV SPV 1 LLC, DSV SPV 2 LLC, DSV SPV 3

1

LLC (collectively the "DSV" Defendants); FTE Networks, Inc., US Home Rentals, LLC ("USHR"), Kaja Holdings, LLC, Kaja Holdings II, LLC, MI Seven, LLC, IN Seven, LLC, RVFM 4 Series, Boom SC, Alan Investments III, LLC, and HOMI Holdings, LLC (collectively the "FTE" Defendants); (individually and collectively the "Settling Defendants"), as well as Atalaya Capital Management LP ("Atalaya"); Kookmin Bank ("Kookmin"), and Samsung Securities, Co. Ltd., ("Samsung") (Kookmin and Samsung are referred to collectively as the "Issuer Noteholders").

Plaintiffs respectfully request that the Court issue an order: (A) granting final approval of the class action Settlement Agreement, ECF No. 264-2; and (B) granting final certification of two classes for purposes of settlement.

1.     **Final Approval of Class Settlement.** In order to approve a class action settlement, a court must find that the proposed settlement is "fair, reasonable, and adequate," after considering whether (1) the class representatives and class counsel adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided for the class was adequate; and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The Sixth Circuit has set forth seven factors to assess whether a class action settlement meets the requirements of Federal Rule of Civil Procedure 23(e): "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the

2

merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). The parties must supply the Court with sufficient information regarding the proposed class settlement to enable it to make those determinations. *See* Fed. R. Civ. P. 23(e)(1)(A).

2.     Here, the parties have provided the Court with a copy of the proposed Settlement Agreement (ECF No. 264-2). For the reasons explained more fully in the accompanying brief, the parties submit that the proposed Settlement Agreement, which was negotiated heavily at arm's length, provides adequate and material relief to the class, treats class members equitably, and allows both sides to avoid substantial costs, risks, and delay that would result from the continuation of this complex litigation. *See* Fed. R. Civ. P. 23(e)(2). Class Counsel and Plaintiffs support approval of the proposed settlement. The parties thus request that the Court grant final approval of the proposed class Settlement Agreement.

3.     **Final Certification of the Settlement Classes.** Certification of a settlement class requires satisfaction of all the elements of Federal Rule of Civil Procedure 23(a) and one or more of the conditions under Rule 23(b). *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 674 (6th Cir. 2020). To satisfy Rule 23(a), plaintiffs must demonstrate that the putative class meets the numerosity,

commonality, typicality, and adequacy of representation requirements. Fed. R. Civ. P. 23(a); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). To satisfy Rule 23(b)(3), Plaintiffs must demonstrate that the predominance and superiority requirements are met. Fed. R. Civ. P. 23(b)(3).

4.     The parties propose final certification of two settlement classes. Class Members are defined as all persons who entered into a Lease with Option to Purchase contract ("LOP") in the state of Michigan from January 1, 2013, through December 31, 2019, that was facilitated by, arranged by, made by, assigned to, or in which the subject property was owned at any time by any of the Defendants in the Litigation. The first class is the LOP Occupant Class and is defined as all Class Members, or their heirs, who entered into an LOP in the State of Michigan that has been assigned to or originated from DSV or the FTE Defendants and who are in possession or control of property that is subject to such LOP as of the Settlement Effective Date, and which property is an Occupied Property. For the avoidance of doubt, LOP Occupants does not include any person who had an LOP and exercised the purchase option, whether through seller financing, third party financing, or cash. The second class is the Non-Occupant Class Members and is defined as all Class Members who are not LOP Occupant Class Members.

5.     For the reasons set forth more explicitly in the accompanying brief, the two Settlement Classes meet the requirement for final certification because the class

is so numerous that joinder of all members is impracticable, there are common questions of law and fact to the class, the claims and/or defenses of the Plaintiffs will fairly and adequately protect the interests of the class, there are common issues of law and fact that predominate over individual ones, and the class action vehicle is a superior way to resolve this controversy.

6.     For the reasons set forth in the attached brief and supporting documents, the settlement is fair, reasonable, and adequate and serves the best interests of the Class Members.

7.     According to LR 7.1, Plaintiffs requested concurrence from Defendants in this motion and received no opposition.

WHEREFORE, Plaintiffs respectfully request that the Court issue an order:

A.  Granting final approval of the proposed class action Settlement Agreement, ECF No. 264-2; and

B.  Granting final certification of two classes for purposes of settlement.

A proposed Order Granting Final Approval of the Class Action Settlement and Certifying the Settlement Classes is attached as Exhibit 1.

Dated: January 23, 2025

Respectfully submitted by,

/s/ Shennan Kavanagh
**NATIONAL CONSUMER LAW CENTER**
Shennan Kavanagh (BBO #655174)
Sarah B. Mancini (G.B. # 319930)
7 Winthrop Square
Boston, MA 02110
Tel: (617) 542-8010
skavanagh@nclc.org
smancini@nclc.org

/s/ Lorray S.C. Brown
**MICHIGAN POVERTY LAW PROGRAM**
Lorray S. C. Brown (P60753)
15 South Washington Street, Suite 202
Ypsilanti, Michigan 48197
Tel.: (734) 998-6100 ext. 613
Fax.: (734) 998-9125
lorrayb@mplp.org

/s/ Bonsitu Kitaba-Gaviglio
**AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN**
Bonsitu Kitaba-Gaviglio (P78822)
Daniel S. Korobkin (P72842)
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6800
bkitaba@aclumich.org
dkorobkin@aclumich.org

/s/ Tiffani Burgess
**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**
Tiffani Burgess (N.Y. 5849344)
Alexandra Sloane Thompson (N.Y. 5241989)
40 Rector St, 5th Floor
New York, NY 10006
212-965-2200
athompson@naacpldf.org
tburgess@naacpldf.org

Pilar Whitaker (D.C. Bar ID 90009046)
Jennifer A. Holmes (D.C. Bar ID 1018798)
700 14th Street NW, Suite 600
Washington, DC 20005
Tel.: (202) 682-1300
jholmes@naacpldf.org
pwhitaker@naacpldf.org

*Attorneys for Plaintiffs and the Putative Classes*

6

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| RHONDA HENDERSON, et al., on behalf of themselves and all others similarly situated, | Case No. 20-cv-12649 |
| Plaintiffs, | Hon. Shalina D. Kumar |
| v. | Mag. Judge David R. Grand |
| VISION PROPERTY MANAGEMENT, LLC, et al., | CLASS ACTION |
| Defendants. | |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASSES

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. iii

ISSUES PRESENTED.................................................................... v

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. vi

INTRODUCTION ........................................................................ 1

BACKGROUND ......................................................................... 2

   I.   History of the Litigation and Settlement Negotiations..................... 2

   II.   Preliminary Approval ......................................................... 3

NOTICE AND CLAIMS PROCESS.................................................... 3

   I.   CAFA Notice ................................................................... 3

   II.   Class Notice .................................................................... 4

   III.   Opt-Outs and Objections .................................................... 5

   IV.   Additional Outreach.......................................................... 5

   V.   Claims Processing ............................................................ 6

   VI.   Estimated Awards ............................................................ 6

SUMMARY OF PROPOSED SETTLEMENT ......................................... 7

   I.   Settlement Classes ........................................................... 7

   II.   Creation of the Qualified Settlement Fund, Net Settlement Fund, and Attorney's Fees and Costs Fund ......................................... 7

   III.   Equitable and Monetary Relief for Settlement Class Members .................... 8

   IV.   Release of Claims ............................................................ 10

   V.   Attorney's Fees and Costs .................................................. 10

ARGUMENT ............................................................................ 10

   I.   The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects ........................................................ 10

      a.   The Settlement is the Product of Extensive Arm's Length Negotiations, and There is No Risk of Fraud or Collusion.................... 11

      b.   The Settlement Will Expeditiously Provide Relief to Class Members and Avoid the Risks and Expenses of Further Prolonged Complex Litigation. ...... 12

c.   Significant Investigation and Exchange of Information Occurred for Plaintiffs to Have Sufficient Information About Vision's Pertinent Business Practices. ...................................................................................................13

d.   Success on the Merits Is Not Guaranteed. ...................................................14

e.   Class Counsel and Class Representatives Support the Settlement. ...........14

f.   The Settlement is Fair to Absent Class Members. .....................................15

g.   The Public Interest Favors Approval of the Settlement. ...........................16

h.   The Attorney's Fees and Costs Allocation is Fair, Reasonable, and Adequate. .......................................................................................................17

II.   The Court Should Grant Final Certification of the Settlement Classes Under Rule 23(b)(3)...............................................................................................18

a.   The Settlement Satisfies Rule 23(a). ..........................................................18

b.   The Settlement Satisfies Rule 23(b)(3). ....................................................23

III.   Class Notice Satisfied Rule 23 ....................................................................24

CONCLUSION .......................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ....................................................................11

*Coulter-Owens v. Rodale, Inc.*,
  No. 14-12688, 2016 WL 5476490 (E.D. Mich. Sept. 29, 2016) .......................14

*Dallas v. Alcatel-Lucent USA, Inc.*,
  No. 09–14596, 2013 WL 2197624 (E.D. Mich. May 20, 2013) ........................12

*In re Delphi Corp. Secs.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ..............................................................12, 15

*Does 1–2 v. Déjà Vu Servs., Inc.*,
  925 F.3d 886 (6th Cir. 2019) ...........................................................11, 12, 15, 16

*Est. of McConnell v. EUBA Corp.*,
  No. 3:18-CV-00355, 2021 WL 1966062 (S.D. Ohio May 17, 2021) ...............16

*Hicks v. State Farm Fire and Cas. Co.*,
  965 F.3d 452 (6th Cir. 2020) ......................................................................23, 24

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of
  Am. v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ......................................................................11, 14

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) ...........................................................*passim*

*Lonardo v. Travelers Indem. Co.*,
  706 F. Supp. 2d 766 (N.D. Ohio 2010) ...........................................................15

*In re Nat'l Prescription Opiate Litig.*,
  976 F.3d 664 (6th Cir. 2020) ...........................................................................18

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13,
  2011) ...............................................................................................................17

*Reese v. CNH Am., LLC*,
    227 F.R.D. 483 (E.D. Mich. 2005) ...................................................................20

*Rikos v. Proctor & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015) .............................................................................23

*Salem v. Mich. Dep't of Corr.*,
    No. 13-14567, 2016 WL 7409953 (E.D. Mich. Dec. 22, 2016)..................19, 23

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) .............................................................................19

*Taylor v. CSX Transp., Inc.*,
    264 F.R.D. 281 (N.D. Ohio 2007) .....................................................................19

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ..............................................................11

*UAW v. Gen. Motors Corp.*,
    No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. March 31,
    2006) ...........................................................................................................11, 14

**Other Authorities**

Fed. R. Civ. P 23(a).................................................................................................19

Fed. R. Civ. P. 23(a)(1)...........................................................................................19

Fed. R. Civ. P. 23(e)(2)...........................................................................................10

Fed. R. Civ. P. 23(g)(4)...........................................................................................22

## <u>ISSUES PRESENTED</u>

1.  Should the Court grant final approval of the proposed class action Settlement Agreement, where the class representatives and class counsel have adequately represented the class; where the settlement agreement was negotiated at arm's length to resolve a complex case; where the settlement agreement provides adequate, fair, and sufficient relief to the class members; and where continued litigation carries significant risks and would require substantial resources on both sides?

2.  Should the Court grant final certification of the Settlement Classes where common questions of law and fact predominate, such that maintaining the suit as a class action is superior to other methods of adjudication?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 23

*Hicks v. State Farm Fire & Cas. Co.,* 965 F.3d 452 (6th Cir. 2020)

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597–98 (E.D. Mich. 2006)

## INTRODUCTION

Plaintiffs Rhonda Henderson, Roberta Faulks, Rachel Church, Teaha Jackson, and Chelsea Pobur (collectively "Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and the Settlement Classes as defined in the Court's November 27, 2024 Order (ECF No. 267, PageID.7132–33), submit this Brief in Support of their Unopposed Motion for Final Approval of the Class Action Settlement and Certification of the Settlement Classes. The proposed class action Settlement Agreement ("Settlement Agreement"), ECF No. 264-2, will fully resolve the instant action against Defendants ACM Vision V, LLC ("ACMV"); Inmost Partners; DSAAgent, LLC; Statebridge Company, LLC ("Statebridge"); DS Agent, LLC; JY First Co. Ltd.; DSV SPV 1 LLC, DSV SPV 2 LLC, DSV SPV 3 LLC (collectively the "DSV" Defendants); FTE Networks, Inc., US Home Rentals, LLC ("USHR"), Kaja Holdings, LLC, Kaja Holdings II, LLC, MI Seven, LLC, IN Seven, LLC, RVFM 4 Series, Boom SC, Alan Investments III, LLC, and HOMI Holdings, LLC (collectively the "FTE" Defendants); (individually and collectively the "Settling Defendants"), as well as Atalaya Capital Management LP ("Atalaya"); Kookmin Bank ("Kookmin"), and Samsung Securities, Co. Ltd., ("Samsung") (Kookmin and Samsung are referred to collectively as the "Issuer Noteholders"). As set forth in more detail below, the settlement achieved by the Parties is fair, reasonable, and provides substantial monetary and equitable relief to the Settlement Classes now,

while avoiding the delay, risk, and expense of continued litigation. For these reasons and those set forth more fully below, the Court should grant final approval of the settlement and enter the proposed Final Approval Order attached as Exhibit 1.

## BACKGROUND

### I.     History of the Litigation and Settlement Negotiations

This action arose out of Vision Property Management's Residential Lease with Option to Purchase ("LOP") program that Plaintiffs allege was deceptive and disproportionately impacted Black consumers in Michigan. Plaintiffs filed their complaint on September 29, 2020, alleging claims under the Fair Housing Act ("FHA"), Equal Credit Opportunity Act ("ECOA"), Truth in Lending Act ("TILA"), and Real Estate Settlement Procedures Act ("RESPA"), as well as state law claims.

After extensive discovery and motion practice over four years—including but not limited to Defendants' Motions to Dismiss, ECF Nos. 71, 80, 82; Plaintiffs' Motions for Leave to File Amended Complaints, ECF Nos., 146, 238; Defendants' Motion for Summary Judgment, ECF Nos. 185, 221, 222, 224, 226, 227; and Plaintiffs' Motion for Reconsideration, ECF No. 234; as well as document discovery, interrogatories, and ten depositions—Plaintiffs and the Settling Defendants participated in weeks-long intensive, good-faith mediation, followed by several weeks of negotiations. The Court held in-person mediation sessions for the Parties on June 18, 2024, and August 1, 2024. On August 8, 2024, the Parties notified

the Court that they reached a tentative agreement on all of the major terms of the settlement. The Parties finalized the settlement agreement on October 18, 2024, resulting in the signed Settlement Agreement, ECF No. 264-2.

## II.     Preliminary Approval

On October 30, 2024, Plaintiffs filed an unopposed motion seeking preliminary approval of the settlement. ECF No. 264. On November 27, 2024, this Court granted Plaintiffs' motion and entered an order: (1) preliminarily approving the Settlement Agreement as fair, reasonable, and adequate; (2) conditionally certifying the Settlement Classes; (3) preliminarily certifying Plaintiffs Rhonda Henderson, Roberta Faulks, Rachel Church, Teaha Jackson, and Chelsea Pobur as Class Representatives; (4) preliminarily certifying attorneys from the ACLU of Michigan, Michigan Poverty Law Program, National Consumer Law Center, and NAACP Legal Defense Fund as Class Counsel; (5) approving the proposed Class Notices and directing notice of the settlement to the class; (6) appointing American Legal Claims Services as the Settlement Administrator; and (7) scheduling a Final Approval Hearing for Thursday, February 27, 2025. *See* ECF No. 267.

## NOTICE AND CLAIMS PROCESS

## I.     CAFA Notice

On November 8, 2024, the Settlement Administrator (American Legal Claims Services, "ALCS") sent CAFA Notice Packages to 57 federal and state officials (the

3

U.S. Attorney General and the Attorneys General of the 50 states, the District of Columbia, and the U.S. Territories). *See* Ex. 2, ALCS Decl. ¶ 3. No federal or state authorities have commented on or objected to the proposed settlement, and the 90-day deadline to do so is February 6, 2025. *Id.* at ¶ 3.

## II.    Class Notice

On December 19, 2024, ALCS sent 198 notices to Occupant Class Members and 897 to Non-Occupant Class Members via United State Postal Service mail. Ex. 2, ALCS Decl. ¶ 5. 90.32% of mailed notices have been deemed delivered. *Id.* at ¶ 8. ALCS also sent notice to e-mail addresses where available. *Id.* at ¶ 5.

The notices informed Settlement Class Members that they could exclude themselves from the settlement by mailing or emailing a request to ALCS by February 17, 2025. Ex. 2, ALCS Decl., Attachment B at 8; Ex. 2 ALCS Decl., Attachment C at 5. The notices also informed Settlement Class Members that they could object to the proposed settlement by mailing or emailing a written objection to the Settlement Administrator by February 17, 2025. Ex. 2, ALCS Decl., Attachment B at 8–9; Ex. 2, ALCS Decl., Attachment C at 6. The date, time, and place of the Final Approval Hearing were included in the notices as required by the Court. *See* Ex. 2, ALCS Decl., Attachment B at 9–10; Ex. 2, ALCS Decl., Attachment C at 7; Prelim. Approval Order, ECF No. 267, PageID.7135.

On January 22, 2025, ALCS sent out a corrected notice to the Occupant Class.

Ex. 2, ALCS Decl., ¶ 7. The corrected notice clarified the terms of the cash-for-keys option as set forth in the Settlement Agreement, which inadvertently did not accurately reflect the terms of the Settlement Agreement. Ex. 3, ACLU-MI Decl. ¶ 8. Specifically, there was a discrepancy between the length of the move-out period, waiver of rent terms, and the timing of the cash-for-keys payment, which were corrected in the amended notice. *Id*. Defendants did not object to the dissemination of the corrected notice. *Id*.

### III.   Opt-Outs and Objections

The period for Occupant and Non-Occupant Class Members to submit objections and opt-outs ends on February 17, 2025.  As of January 22, 2025, ALCS has received 2 opt-outs. *Id*. at ¶ 9. No objections have been submitted.[1] *Id*. at ¶ 10.

### IV.   Additional Outreach

To assist Occupant Class Members who elect to attempt to either sell or purchase their homes, Class Counsel has been engaging in an extensive outreach campaign since December 26, 2024. Ex. 3, ACLU-MI Decl. ¶ 4. This outreach campaign included sending individual e-mails to Occupant Class Members for whom Class Counsel had email addresses to (1) determine whether they received the Class Notice and (2) encourage them to review the terms of the notice. *Id*. Class

---

[1] One Occupant Class Member indicated to class counsel they are considering either opting out or objecting but have not yet decided.

Counsel also attempted to reach each Occupant Class Member via phone to do the same and answer any questions they may have about the notice or settlement. *Id*. at ¶¶ 4, 7. Additionally, Class Counsel hosted an online webinar to explain Occupants' options under the settlement and invited Occupants to several informational workshops for those who wish to buy or sell their homes. *Id*. at ¶ 5.

## V.    Claims Processing

On December 19, 2024, ALCS sent a Claim Form to all individuals who received a Non-Occupant Class Notice and an Option Form to all individuals who received an Occupant Class Notice. Ex. 2, ALCS Decl. ¶ 5. The Claim Form and Option Form were also both available on the Settlement Website and could be submitted online. *Id*. at ¶ 14. To be valid, Claim Forms must be submitted online or by mail and postmarked no later than February 17, 2025. *Id*. at ¶ 11. Option Forms must be submitted online or by mail and postmarked no later than 60 days after the Settlement Effective Date to be valid. *Id*. at ¶ 13. As of January 22, 2025, ALCS has received 228 valid Claim Forms and 20 valid Option Forms. *Id*. at ¶¶ 12–13.

## VI.    Estimated Awards

As of January 22, 2025, 228 Non-Occupant claimants are eligible to receive a *pro rata* payment from the $325,000 Net Settlement Fund. Ex. 2, ALCS Decl. ¶ 11; *see also* ECF No. 264-2, PageID.6895–96. Thus, if no additional claimants are verified as Settlement Class Members, each Non-Occupant claimant will receive an

6

estimated payment of approximately $1,425.00. If all 897 Non-Occupant Class

Members filed claims, each person would receive roughly $362.00. Therefore, Non-

Occupant awards will range from approximately $362.00–$1,425.00.

Occupant Class Members who submit valid and timely Option Forms will be

entitled to the benefits described in Section 3.3 of the Settlement Agreement. ECF

No. 264-2, PageID.6890–95. As of January 22, 2025, Class Counsel has confirmed

that 20 Occupant Class Members have returned valid Option Forms, and no

Occupant Class Members have opted out of the settlement. *Id*. at ¶¶ 10, 13.

<u>**SUMMARY OF PROPOSED SETTLEMENT**</u>

### I.    Settlement Classes

As further discussed below, the proposed Settlement Agreement, ECF No.

264-2, provides monetary and/or equitable relief to two settlement classes: the LOP

Occupant Class and the Non-Occupant Class. (§§ 1.19; 1.25; 3.2, 3.3(A), 3.4(A)).

ECF No. 264-2, PageID.6886, 6890, 6895.

### II.    Creation of the Qualified Settlement Fund, Net Settlement Fund, and Attorney's Fees and Costs Fund

The proposed settlement authorizes the creation of two funds. The Qualified

Settlement Fund ("QSF") will be funded with $375,000 by Defendant DSV. (§§

1.33; 3.1(A)–(B)). PageID.6887, 6889. The QSF will fund service awards of $10,000

to each of the five Named Plaintiffs. (§§ 1.33; 3.6). PageId.6887, 6896. The Net

7

Settlement Fund ("NSF") is the remainder of the QSF, and will provide monetary compensation, distributed on a pro rata basis, for the Non-Occupant Settlement Class. (§§ 1.21; 3.4(B)). PageID.6886, 6895. The Attorney's Fees and Costs Fund will be funded with $375,000 by Defendant ACMV to pay for settlement administration and Class Counsel's fees and costs. (§§ 1.5; 3.1(C); 3.5). PageID.6884–85, 6889, 6896.

## III.   Equitable and Monetary Relief for Settlement Class Members

The LOP Occupant Class Members will be given the opportunity to elect one of two options. (§ 3.3). PageID.6890–95. First, under the "Payoff Option," an Occupant Class Member may pay off the remaining balance of their contract, either through third-party financing or cash, and receive the property deed, as well as a $2,000 credit toward the option price balance at closing. If an LOP Occupant Class Member elects the Payoff Option but does not pay the option price balance by the end of the Lease Period, the Class Member must vacate the property and upon timely doing so, shall receive $2,000, or if they fail to vacate, will forfeit the $2,000 payment and may be subject to an eviction in accordance with Michigan law. An LOP Occupant may also sell the property and retain the equity above the option price balance. The opportunity to obtain this relief is significant because it facilitates access to the benefits of homeownership, of which Plaintiffs allege they and the class were deprived. Second, under the Cash for Keys Option, an Occupant Class Member

8

may also elect to vacate the property and receive $4,000 in exchange for doing so. Rental arrears are waived for all Class Members through February 28, 2025. (§ 3.3(B)(4)). PageID.6891.

These benefits are significant and essential to allow Occupant Class Members to obtain a fresh start, either by setting them up to have a reasonable chance to secure financing to own their homes, or being able to keep the full amount of equity in their homes if they sell, or being able to vacate the property with cash in hand to effectively move into new residences. Plaintiffs' counsel, in addition to the Settlement Administrator, will be available to Settlement Class Members to assist them in navigating this process.

The Non-Occupant Class Members will be entitled to a monetary award from the NSF. (§ 3.4). PageID.6895–96. A pro rata payment will be determined by dividing the NSF by the total number of valid claims filed. *Id.*

In addition to being entitled to receive the above-named relief, the five Named Plaintiffs will receive $10,000 as a service award from the QSF. (§ 3.6). PageID.6896.

The proposed Settlement Agreement also provides that this Court will retain jurisdiction over the interpretation and implementation of the agreement (§ 6.8), PageID.6901, and provides that this case will be dismissed with prejudice when a final order is entered (§§ 3.7; 4.4). PageID.6896, 6899. Plaintiffs' counsel estimates

9

that the proposed Settlement Agreement provides approximately $3,500,000 in value to class members.

## IV.   Release of Claims

In consideration for the equitable and monetary relief provided by the proposed settlement, Class Members who do not opt out of the settlement will release the Settling Defendants, the Issuer Noteholders, and Atalaya from "any and all claims and causes of action arising from any fact currently in existence, whether known or unknown, whether at law or at equity, that any of them might have against any of the Released Parties that were or could have been asserted in the Litigation and any claim that is related in any way to an LOP." (§ 5.1). PageID.6900.

## V.   Attorney's Fees and Costs

The proposed settlement provides attorney's fees and costs of $375,000, which will also be used to fund the settlement administration. (§ 3.5). PageID.6896. As of January 22, 2025, no settlement class member has objected to Plaintiffs' attorney's fees and costs. Ex. 2, ALCS Decl. ¶ 10.

## ARGUMENT

## I.   The Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects

Before providing final approval of a class action settlement, a court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P.

23(e)(2). The Sixth Circuit has "established a seven-factor test to assess whether a class action settlement is 'fair, reasonable, and adequate' under the Federal Rule of Civil Procedure 23(e)." *Does 1–2 v. Déjà Vu Servs., Inc.,* 925 F.3d 886, 894 (6th Cir. 2019) (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). Those factors include: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631; *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003).

In granting preliminary approval of the Settlement Agreement, this Court found that the Agreement is "the result of serious, extensive arm's length and non-collusive negotiations between experienced counsel," "falls within a range of reasonableness warranting final approval," and "has no obvious deficiencies." ECF No. 267, PageID.7134. For these reasons and the reasons stated below, this Court should grant final approval of the proposed Settlement Agreement.

   a.   The Settlement is the Product of Extensive Arm's Length Negotiations, and There is No Risk of Fraud or Collusion.

Courts "'presume the absence of fraud or collusion' in negotiating [class-action] settlement[s], unless evidence to the contrary is offered." *In re Telectronics*

11

*Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001). Courts also have found settlements that are a product of mediation satisfy the arms-length requirement. *See, e.g.*, *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624, at *9 (E.D. Mich. May 20, 2013) (Ex. 4). The Parties negotiated this settlement at arm's length and over several months with the assistance of the Court.

>    b. The Settlement Will Expeditiously Provide Relief to Class Members and Avoid the Risks and Expenses of Further Prolonged Complex Litigation.

"[T]here is no such thing as risk-free, expense-free litigation." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 596 (E.D. Mich. 2006). "Courts have held that 'there is a strong public interest in encouraging settlement of complex litigation and class-action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'" *Déjà Vu*, 925 F.3d at 899 (quoting *Cardizem*, 218 F.R.D. at 530). Class actions are inherently complex, and settlement avoids the costs and delays associated with them. *See In re Delphi Corp. Secs.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) (citation omitted).

This case is no exception. Absent the proposed settlement, Plaintiffs and the Settling Defendants would have to pursue additional motion practice, brief and argue class certification, and prepare for and undertake a trial.

In addition to expeditious relief to all Class Members, the proposed settlement provides meaningful relief to Occupant Class Members, who will have the

opportunity to obtain a deed and mortgage, purchase the property for cash, or sell the property and recoup the sale proceeds above the option price balance. Given the amount of money, time, effort, and care the Occupant Class Members have put into their homes over time, and the considerable uncertainty they now face regarding their rights in the property, the proposed settlement would provide significant relief.

      c.  <u>Significant Investigation and Exchange of Information Occurred for Plaintiffs to Have Sufficient Information About Vision's Pertinent Business Practices.</u>

The Sixth Circuit's standard does not require the court to "possess sufficient 'evidence to decide the merits'" of Plaintiffs' claims. *IUE-CWA*, 238 F.R.D. at 597 (quoting *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151 at *19 (E.D. Mich. March 31, 2006)) (Ex. 5). Rather, "the district judge need only have sufficient facts before [her] to intelligently approve or disapprove the settlement." *Id.* at 597–98 (quoting *UAW*, 2006 WL 891151 at *19). Here, the Parties engaged in discovery, which included exchange of documents and depositions of the three Named Plaintiffs, representatives of Defendant Atalaya, and of the FTE Defendants. Prior to mediation, the Parties submitted confidential mediation statements to the Court and exchanged information with one another about the size and scope of the class. The information gathered to date and in mediation satisfies the threshold necessary to demonstrate that class counsel and the Court have sufficient information to evaluate Plaintiffs' claims.

d.  Success on the Merits Is Not Guaranteed.

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631. In assessing a settlement, the Court's task "is not to decide whether one side is right or even whether one side has the better of these arguments," but rather "whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.* at 632. Here, a bona fide legal dispute exists in which neither side is guaranteed success on the merits. While Plaintiffs are confident in the merits of this case, the Settling Defendants deny liability for any alleged discriminatory practices on the part of Vision and themselves. At the time the Parties negotiated the proposed Settlement Agreement, the Court had granted Defendants' Motion for Summary Judgment as to Plaintiffs' FHA and ECOA disparate impact claims, but denied Defendants' motion as to Plaintiffs' FHA and ECOA disparate treatment. ECF No. 255, PageID.6728–29.

e.  Class Counsel and Class Representatives Support the Settlement.

This Court has consistently held that "where class counsel is experienced and diligent, their 'endorsement of the settlement is entitled to significant weight.'" *Coulter-Owens v. Rodale, Inc.*, No. 14-12688, 2016 WL 5476490, at *4 (E.D. Mich. Sept. 29, 2016) (Ex. 6). Given Class Counsel's extensive experience in complex litigation and class actions, ECF No. 264-9, PageID.7009–10, 7015; ECF No. 264-10, PageID.7021–22; ECF No. 264-11, PageID.7028–29; ECF No. 264-12, PageID.7038–39, their "positive outlook toward the fairness of the settlement"

14

favors approving it. *Déjà Vu*, 925 F.3d at 899. Additionally, all class representatives have faithfully and fairly advocated for the best interests of the class members and fully support the settlement. ECF No. 264-10, PageID.7023.

      f.  <u>The Settlement is Fair to Absent Class Members</u>.

"This factor assesses whether the proposed settlement[] 'appear[s] to be the result of arm's length negotiations between the parties and fairly resolves all claims which were, or could have been asserted.'" *Delphi*, 248 F.R.D. at 498. Experienced counsel and an experienced mediator also serve as a check on the process and a safeguard for the rights of absent class members. *Id.*

The proposed settlement is even-handed and does not improperly favor Plaintiffs compared to the rest of the class members. All Class Members will be entitled to receive relief based on their individual circumstances, which is a substantial benefit. The Settlement Agreement provides that Class Counsel will ask the Court to approve a service award of $10,000 to each of the five Named Plaintiffs. Courts within the Sixth Circuit have recognized that "in common fund cases and where the settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010).

Here, the Named Plaintiffs' service award is appropriate for the level of their involvement in the case. The Named Plaintiffs have been actively involved in the litigation since they each joined the case. Their participation has included, but was not limited to, providing documents and information to counsel, sitting for depositions, reviewing significant filings, and attending numerous meetings with counsel. When presented with settlement offers, Named Plaintiffs always thought about and protected the interests of absent class members, even at times rejecting offers that granted them greater relief than putative class members in exchange for dismissing the case. An award of $10,000 is reasonable in light of their service and the benefits to class members. *See e.g.*, *Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062, at *8 (S.D. Ohio May 17, 2021) (Ex. 7).

g.  The Public Interest Favors Approval of the Settlement.

"Courts have held that 'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'" *Déjà Vu*, 925 F.3d at 899. "Conserving the resources of the parties and the court" serves the public interest. *IUE-CWA*, 238 F.R.D. at 599.

In addition to simplifying this litigation and conserving judicial resources, the proposed settlement will benefit the public through relief that will result in clarifying the rights of Occupant Class Members with respect to their homes and creating

16

opportunities for true homeownership or to walk away with compensation. *See* ECF No. 264-2, PageID.6890–95. Monetary relief to the Non-Occupant Class would resolve the claims at issue and conserve legal resources.

> h. The Attorney's Fees and Costs Allocation is Fair, Reasonable, and Adequate.

Further, the $375,000 allocation for Attorney's Fees and Costs Fund is fair, reasonable, and adequate. On behalf of Plaintiffs, nine attorneys from across four different organizations expended significant time and costs litigating this case over the past four years. This has resulted in Plaintiffs' counsel's total lodestar of nearly $3,000,000 and costs exceeding $100,000, and only a fraction of those amounts will be reimbursed through the Attorney's Fees and Costs Fund. This fund also includes the Settlement Administrator's fees and costs, and other costs of settlement administration to assist class members through the settlement options. The fees sought amount to no more than 10.7% of the total value created by the settlement and approximately 10%–15% of Plaintiffs' counsel's lodestar. *See* ECF No. 264-9, PageID.7016; ECF No. 264-10, PageID.7023–24; ECF No. 264-11; PageID.7034; ECF No. 264-12, PageID.7040–41. The requested fee award is thus far below the proportions generally approved by courts and satisfies Rule 23(e)(2). *See e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (Ex. 8) (noting that 30% of the total value of the settlement is a "well-accepted ratio" for fee awards in complex class actions).

17

## II.    The Court Should Grant Final Certification of the Settlement Classes Under Rule 23(b)(3)

Certification of a settlement class requires satisfaction of all the elements under Rule 23(a) and one or more of the conditions under Rule 23(b). *In re Nat'l Prescription Opiate Litig*., 976 F.3d 664, 674 (6th Cir. 2020). Since this Court's preliminary finding that the Settlement Classes satisfy Rules 23(a) and (b)(3) on November 27, 2024, ECF No. 267, PageID.7133, nothing has occurred that would alter the propriety of the Court's certification. For this reason and the reasons stated below, this Court should grant final certification of the Settlement Classes.

 a.    The Settlement Satisfies Rule 23(a).

The Settlement Agreement defines Class Members as "all persons who entered into a LOP in the state of Michigan [from January 1, 2013, through December 31, 2019], that was facilitated by, arranged by, made by, assigned to (in fee and/or as collateral), or for which the subject property was owned at any time by, any of the Defendants (as well as their affiliates) in the Litigation." ECF No. 264-2, PageID.6885. The two Settlement Classes are defined as follows:

> "LOP Occupant Class Members" means all Class Members, or their heirs, who entered into an LOP in the State of Michigan that has been assigned to or originated from DSV or the FTE Defendants and who are in possession or control of property that is subject to such LOP as of the Settlement Effective Date, and which property is an Occupied Property. For the avoidance of doubt, LOP Occupants does not include any person who had an LOP and exercised the purchase option, whether through seller financing, third party financing, or cash.

18

"Non-Occupant Class Members" means all Class Members who are not LOP Occupant Class Members.

*Id. at* PageID.6886.

To satisfy Rule 23(a), the Named Plaintiffs must demonstrate numerosity, commonality, typicality, and adequacy for each settlement class. Fed. R. Civ. P. 23(a). In addition, the Named Plaintiffs must also meet Rule 23(a)'s implicit requirements: that each "class [is] 'definite' or 'ascertainable'" and that the Named Plaintiffs are "member[s] of the class." *E.g.*, *Salem v. Mich. Dep't of Corr.*, No. 13-14567, 2016 WL 7409953, at *4 (E.D. Mich. Dec. 22, 2016) (Ex. 9).

### i.   *Numerosity Is Established.*

While there is no "strict numerical test," *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n 4 (6th Cir. 1976), courts have recognized that a class size of 40 or more members is sufficient to satisfy numerosity. *See Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (collecting cases). In total, the Class Members were involved in approximately 774 transactions (130 in which Occupant Class Members are still occupying the home, and approximately 644 transactions involving Non-Occupant Class Members) based on written discovery and the FTE and Statebridge Defendants' documents and representations. ECF No. 264-9, PageID.7014–15. Each transaction represents at least one class member, with many of the transactions including both a primary and secondary applicant. Thus, per Rule 23(a)(1), the Classes plainly are "'so numerous that joinder of all members is

impracticable.'" *IUE-CWU*, 238 F.R.D. at 591 (quoting Fed. R. Civ. P. 23(a)(1).

ii. *Class Claims Present Common Issues of Law and Fact*.

Under Rule 23(a)(2), commonality "'simply requires a common question of law or fact.'" *Reese v. CNH Am., LLC*, 227 F.R.D. 483, 486 (E.D. Mich. 2005). A single common question of law or fact will suffice. *Id*. Here, the common questions of law and fact include: (i) whether Vision intentionally targeted Black homebuyers in violation of the FHA and ECOA; (ii) whether the transaction was covered by the TILA and whether Defendants' practices violated TILA; (iii) whether Defendants failed to properly handle consumer escrow accounts for taxes and insurance as required by RESPA and the LOP contract; and (iv) whether the Class Members are entitled to the equitable relief and statutory damages they seek.

iii. *Plaintiffs' Claims are Typical of Class Members' Claims*.

A plaintiff's claim satisfies the typicality requirement "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *IUE-CWA*, 238 F.R.D. at 591. Plaintiffs Henderson's, Faulks', and Church's and the Occupant Class Members' claims and damages relate to their experiences attempting to purchase a home, which they still occupy, through Vision's LOP program. *See* Pls.' Second Am. Compl., ECF No. 146-2, PageID.1780 and ECF No. 146-3, PageID.1974. Plaintiffs Jackson's and Pobur's damages and the Non-Occupant Class Members' damages claims relate to their unsuccessful attempts to purchase

homes through Vision's LOP program, and subsequent surrender of the homes. *Id*. In this manner, Plaintiffs' claims arise out of the same event, practice, or course of conduct that gives rise to the claims of other class members, satisfying Rule 23(a)(3).

      iv. *Plaintiffs and Class Counsel are Adequate and Should Be Appointed Class Representatives and Class Counsel.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *See IUE-CWA*, 238 F.R.D. at 592. Plaintiffs' interests are consistent with and not antagonistic to the interests of the class. Plaintiffs all expended resources to obtain the benefit of the LOP contracts. Plaintiffs Faulks, Henderson, and Church, like members of the occupant class, have remained in their properties under the LOP contracts and seek to obtain the promise of a path to homeownership under their contracts. Plaintiffs Pobur and Jackson, like members of the non-occupant class, were unable to remain in their properties under the LOP contracts and seek to remedy the financial hardship they and others like them experienced.

The Named Plaintiffs' persistence in litigating this case over several years shows that they are prepared to thoroughly protect the interests of the class. During the pendency of the litigation, the Named Plaintiffs each undertook varying levels of burdens and risks, including remaining in properties that were uninhabitable at times and under contracts with terms that left them in legal limbo. These Plaintiffs incurred significant demands on their time and expenses to participate in litigation.

Plaintiffs Henderson, Faulks, and Church participated for over four years, and Plaintiffs Pobur and Jackson participated for two years. Plaintiffs Henderson, Faulks, and Church have produced documents and been deposed, and all Named Plaintiffs have communicated extensively with their counsel regarding negotiations in this matter on behalf of absent class members. *See* ECF No. 264-10, PageID.7022–23; ECF No. 264-12, PageID.7040. Thus, they satisfy the requirements of Rule 23(a)(4).

To determine counsel's adequacy under Rule 23(g), the court must consider counsel's work on the case, class action experience, relevant knowledge, and the resources committed to class representation. *See IUE-CWA*, 238 F.R.D. at 592 (citing Fed. R. Civ. P. 23(g)(1)(A)). Class counsel must also "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Here, Plaintiffs' counsel investigated, developed, and pursued Plaintiffs' claims vigorously and will continue to do so for the class. They are highly qualified and experienced attorneys with extensive experience in complex class action litigation, consumer rights, civil rights, and housing discrimination. *See* ECF Nos. 264-10, 264-11, 264-12, 264-13. Throughout this litigation, they have zealously represented the interests of the Plaintiffs and putative class members and engaged in extensive discovery and motions practice. *Id*. Plaintiffs' counsel have devoted significant time to this matter and are capable of committing the resources necessary to represent the class. *Id*.

v. *The Settlement Satisfies Rule 23(a)'s Implicit Requirements.*

The settlement also meets the "'implicit requirements' of class certification: that the class be 'definite' or 'ascertainable' and that the class representative be a member of the class." *Salem*, 2016 WL 7409953, at \*4 (Ex. 9). Plaintiffs have defined the classes "by objective criteria" as set forth in the class definitions, which were readily ascertainable from Defendants' records. *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 526 (6th Cir. 2015). Plaintiffs Henderson, Church, and Faulks are members of the LOP Occupant Class, and Plaintiffs Pobur and Jackson are members of the Non-Occupant Class.

b.  The Settlement Satisfies Rule 23(b)(3).

i. *Common Issues of Law and Fact Predominate.*

To meet Rule 23(b)(3)'s predominance requirement, "a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452, 459–60 (6th Cir. 2020). Here, all Class Members entered into LOP contracts that were based on a common form. All Class Members' claims center around the same legal and factual issues, including whether the LOP contract was unfair, deceptive, and/or predatory under the FHA and ECOA, whether the LOP constituted credit under TILA, and whether certain Defendants failed to make required disclosures under TILA. The evidence of intentional targeting for the FHA and ECOA claims is also common across the class.

23

    ii. *The Class Action Device Is Superior in this Action*.

  A class action must also be "a superior way to resolve the controversy." *Hicks*, 965 F.3d at 463. The class device is plainly superior in this case because the alternative to a single action would be potentially 774 individual actions, swamping the courts and resulting in inefficiencies and potentially inconsistent rulings. *Id.*

## III. **Class Notice Satisfied Rule 23**

  This Court has already held that the Class Notices comply with Rule 23 and due process because they "are reasonably calculated, under all the circumstances to apprise interested parties of the pendency of the Litigation and affords them an opportunity to present their objections." ECF No. 267, PageID.7134–35. The respective notices clearly apprise the Class Members of the background of the lawsuit, the scope of the proposed classes, and the terms of the Settlement Agreement and their rights and options with regards to it as required by Rule 23(c) and (e). *See* ECF No. 264-3. As explained above, the Parties and Settlement Administrator sent the Class Notices to the Settlement Classes on December 19, 2024, and the notice was reasonably tailored to reach absent settlement members. Thus, notice fully complied with the requirements of Rule 23.

## <u>CONCLUSION</u>

  For the reasons stated herein, Plaintiffs respectfully request that the Court enter an order granting final approval of the Parties' settlement and granting final certification of the proposed Settlement Class.

24

Dated:        January 23, 2025

Respectfully submitted by,

/s/ Shennan Kavanagh
**NATIONAL CONSUMER LAW CENTER**
Shennan Kavanagh (BBO #655174)
Sarah B. Mancini (G.B. # 319930)
7 Winthrop Square
Boston, MA 02110
Tel: (617) 542-8010
skavanagh@nclc.org
smancini@nclc.org

/s/ Lorray S.C. Brown
**MICHIGAN POVERTY LAW PROGRAM**
Lorray S. C. Brown (P60753)
15 South Washington Street, Suite 202
Ypsilanti, Michigan 48197
Tel.: (734) 998-6100 ext. 613
Fax.: (734) 998-9125
lorrayb@mplp.org

/s/ Bonsitu Kitaba-Gaviglio
**AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN**
Bonsitu Kitaba-Gaviglio (P78822)
Daniel S. Korobkin (P72842)
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6800
bkitaba@aclumich.org
dkorobkin@aclumich.org

/s/ Tiffani Burgess
**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**
Tiffani Burgess (N.Y. 5849344)
Alexandra Sloane Thompson (N.Y. 5241989)
40 Rector St, 5th Floor
New York, NY 10006
212-965-2200
athompson@naacpldf.org
tburgess@naacpldf.org

Pilar Whitaker (D.C. Bar ID 90009046)
Jennifer A. Holmes (D.C. Bar ID 1018798)
700 14th Street NW, Suite 600
Washington, DC 20005
Tel.: (202) 682-1300
jholmes@naacpldf.org
pwhitaker@naacpldf.org

*Attorneys for Plaintiffs and the Putative Classes*

25